Judge CALABRESI dissents in a separate opinion.
JOHN M. WALKER, JR., Circuit Judge:
Plaintiff-Appellee Frederick J. Harrington, Jr., (“Harrington”) filed this action in the United States District Court for the Eastern District of New York (Nina Gershon, Judge), against Defendants-Appellants Atlantic Sounding Co., Inc., Weeks Marine, Inc. (Atlantic Sounding’s corporate parent), and the vessel MV CANDACE (collectively, “Defendants”) pursuant to the Jones Act, 46 U.S.C.App. § 688, seeking recovery for injuries sustained while he was employed as a seaman on the CANDACE. Defendants sought to dismiss the complaint or, in the alternative, to compel arbitration and to stay the district court action, pursuant to a post-injury arbitration agreement between the parties. Harrington opposed Defendants’ motion, arguing that the arbitration agreement, which he signed in return for cash advances against his claim, was unenforceable as the result of intoxication and lack of mental capacity, and because the agreement was unconscionable.
After an evidentiary hearing, the district court determined that the arbitration agreement was unenforceable under New Jersey law due to substantive and procedural unconscionability, and did not address the claims of intoxication and lack of mental capacity. On appeal, Harrington resists arbitration on the basis that the arbitration agreement is unenforceable as a matter of law under § 6 of the Federal Employer’s Liability Act (“FELA”), 45 U.S.C. § 56, and alternatively, that the unconscionability finding below was correct under New Jersey law.
We find that FELA § 6 does not apply to seamen’s arbitration agreements, and thus the arbitration agreement is not unenforceable as a matter of law, and that the district court’s finding that the arbitration agreement was unenforceable due to unconscionability was erroneous. Therefore, we vacate the district court’s decision and remand to the district court for consideration of Harrington’s remaining contractual defenses.
BACKGROUND
After more than two years with Weeks Marine as an Able Bodied Seaman, Harrington suffered a back injury in April 2005 while working aboard the CANDACE, a vessel owned and operated by Weeks Marine. Shortly thereafter, Harrington left the CANDACE to live with his father in Massachusetts and began receiving maintenance payments of twenty dollars per day from Weeks Marine. Weeks Marine also paid all medical expenses resulting from Harrington’s back injury.
In Massachusetts, Harrington’s doctor prescribed painkillers and cortisone shots to help him cope with his injury. At the evidentiary hearing held on the instant motion, Harrington testified that the medications interfered with his concentration and made him drowsy. He also testified that during this time he was drinking up *116 wards of a half-gallon of vodka every two or three days. He added that he has a history of alcohol abuse for which he has undergone substance abuse treatment on several occasions, most recently in March 2006.
Thereafter, Harrington was diagnosed with herniated discs and was told by his doctor that he required lumbar surgery. In early July 2005, he called Weeks Marine to request additional financial support for his injury and upcoming surgery. In response, on July 11, 2005, Harrington received a “Claim Arbitration Agreement” (the “Agreement”) from Defendants in the mail. Defendants prepared and signed the Agreement in New Jersey, the location of their principal place of business, and sent it to Harrington for his signature at his father’s house in Massachusetts.
The Agreement included the following language (with “You” referring to Defendants and “I” referring to Harrington):
Although You are obligated to pay maintenance and cure, You are not currently responsible or liable for any other damages under general maritime law, the Jones Act or any other applicable law. Nonetheless, You are prepared to make voluntary advances against settlement of any claim that could arise out of the personal injury/illness claim I have made ..., provided I agree to arbitrate any such claim under the American Arbitration Association (AAA) Rules.... The decision of the arbitrators shall be final and binding on the parties and any United States District Court shall have the jurisdiction to enforce this agreement, to enter judgment on the award and to grant any remedy provided by law in respect of the arbitration proceedings.
(emphasis omitted.)
Under the Agreement, in exchange for Harrington’s undertaking to arbitrate his claims, Defendants “agree[d] to advance sixty percent (60%) of the gross wages [Harrington] would have otherwise earned based upon [his] earnings history ... as an advance against settlement until [Harrington was] declared fit for duty, and/or at maximum medical improvement, and/or October 10, 2005, whichever occurs first.” The Agreement further “credited [the advance] against any settlement [Harrington] might eventually reach with [Defendants] or against any future arbitration award [he] might receive.” Pursuant to the Agreement, Defendants also agreed to advance “up to $750.00 and any deposit for compensation of the arbitrators ..., subject to subsequent allocation.”
A cover letter accompanying the Agreement explained:
Our company recognizes the value in its long term employees and the hardship that can be associated with a dramatic income decrease during a period of incapacity. Although we are under no legal obligation to advance funds in this type of situation, our towing division has approved such voluntary payment in your case, so long as you are willing to agree to arbitrate any disputes that might arise from this claim.
According to Harrington’s affidavit, he was told by Defendants that they “wanted to help [him] out because of [his] situation,” and that the payments made under the Agreement would constitute “an advance against any claim [he] may bring.” PI. Decl. ¶ 9. Harrington also alleges that Defendants “did not tell [him] that [he] was giving up any rights” by signing the Agreement. PI. Decl. ¶ 9.
On July 18, 2005, Harrington underwent lumbar surgery, and was released from the hospital the next day. On July 23, 2005, Harrington went to a local bank with his father to sign the Agreement and have it *117 notarized. Harrington was still taking painkillers and drinking heavily during his recovery from surgery, and he testified to being in “tough shape” on July 23 because he “was taking medication and ... had a couple of drinks that day.”
The notary read aloud the Agreement’s acknowledgment section, which stated, “[ojther than the promises contained in this agreement, I have been given no other promises to induce me to sign this Claim Arbitration Agreement. I have not been coerced in any way into signing this agreement. I have signed this agreement knowingly and willingly.” The notary asked Harrington if he understood what he was signing before she notarized the Agreement. Harrington answered that he did and signed the Agreement. The notary testified that Harrington did not appear to be drunk when he signed the Agreement, and that she would not have notarized the Agreement if he appeared intoxicated or in any way impaired. The notary testified, however, that Harrington appeared to be in pain and had to be assisted by his father when sitting down and standing up and that Harrington “appeared disheveled and unke[m]pt,” Harrington v. Atl. Sounding Co., No. 06-cv-2900(ng)(wp), 2007 WL 2693529, at *2 (E.D.N.Y. Sept.11, 2007), whenever the notary saw him at the bank and was incoherent whenever he spoke, which was not often.
Pursuant to the Agreement, Defendants sent support checks to Harrington, which Harrington’s father cashed for him, ending with the last payment on October 10, 2005. Because he was still unable to work, Harrington contacted Weeks Marine to request continued payment of sixty percent of his wages until he was fit to return to work. In response, on December 2, 2005, Weeks Marine sent him the Addendum Claim Arbitration Agreement (the “Addendum”). The Addendum amended the Agreement by extending the partial payment of Harrington’s wages until January 10, 2006 and specified that, apart from this amendment, “the prior Claim Arbitration Agreement, executed on July 23, 2005, remain[ed] in full force and effect.” The Addendum, like the Agreement, also stated: “I have been given no other promises to induce me to sign this Addendum thereto. I have not been coerced in any way into signing this Addendum agreement. I have signed this Addendum agreement knowingly and willingly.”
On December 8, 2005, Harrington, who testified that he was drinking two quarts of vodka and six beers every day at the time he received the Addendum, brought the Addendum to the same notary he had used to execute the Claims Arbitration Agreement. The notary again read the acknowledgment aloud and asked Harrington if he understood what he was signing. Harrington again answered that he did and signed the Addendum. The notary testified that Harrington appeared to be in the same condition on December 8 as on July 23, and that she did not believe him to be intoxicated or impaired, while conceding that she is “not around those type of people,” so she “couldn’t judge” whether Harrington was intoxicated or impaired. Dep. Tr. 27:9-10, Jan. 29, 2007. The notary testified, however, that Harrington “appeared to be in pain” every time she saw him. Dep. Tr. 28:4.
Defendants terminated Harrington’s employment effective January 27, 2006. In June 2006, Harrington filed the instant action. Defendants moved to dismiss the complaint, or in the alternative, stay the action and compel arbitration pursuant to the Agreement (as amended by the Addendum).
In July 2007, the district court held an evidentiary hearing to determine the valid *118 ity of the Agreement, and two months later, finding the Agreement invalid, denied Defendants’ motion in its entirety. Harrington, 2007 WL 2693529, at *6. The district court assumed that, under § 2 of the Federal Arbitration Act (“FAA”), 9 U.S.C. § 2, Harrington bore the burden of establishing a basis for not enforcing the Agreement. After observing that, under the FAA, “questions of contractual validity ... of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA,” Harrington, 2007 WL 2693529, at *3 (quoting Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir.2003) (per curiam)) (internal quotation marks omitted) (alteration in original), the district court chose to apply New Jersey law (where Weeks had its principal place of business) instead of Massachusetts law (where Harrington resided) because New Jersey had “the most significant relationship to the arbitration agreements and the employment relationship between the parties,” while at the same time noting that “the principles of contract law are fundamentally the same in both states and ... the application of either state’s law would yield the same result.” Id.
The district court then found the Agreement both procedurally and substantively “unconscionable and therefore unenforceable” under New Jersey law, citing, inter alia, Sitogum Holdings, Inc. v. Ropes, 352 N.J.Super. 555, 800 A.2d 915, 921 (Ch. Div.2002) (noting that “[m]ost [New Jersey] courts have looked for a sufficient showing of both [procedural and substantive unconscionability] in finding a contract unconscionable”). Harrington, 2007 WL 2693529, at *4. The district court found that the facts of this case satisfied New Jersey’s “sliding scale” approach to unconscionability, under which “a claim of unconscionability can succeed when one form of it, either procedural or substantive, is greatly exceeded, while the other form is only marginally exceeded.” Id.
In finding procedural unconscionability, the district court placed “particular significance” on the timing of the original Agreement. Id. The district court noted that Defendants sent Harrington the Agreement three months after his injury, and shortly before he was scheduled to undergo major surgery with “a lengthy recovery.” Id. The district court found that Harrington had an “impaired ... ability to understand the nature and consequences of the document he was signing,” that the notary “had doubts about [Harrington’s] condition,” and that “[Defendants were aware of his heavily medicated state” and his financial vulnerability. Id. The district court noted that Harrington did not have an attorney, nor was he advised to seek representation when he signed the Agreement, and that the Agreement “fails to set forth the terms in such a way that an average person would understand its substance.” Id. at *5. The district court concluded that “all of the facts demonstrate that [Harrington] was in a substantially weaker bargaining position than [Defendants],” and that the Agreement was therefore procedurally unconscionable. Id.
With respect to substantive unconscionability, the district court found “startling” the provision in the Claims Arbitration Agreement (incorporated by reference into the Addendum) that provided that Defendants “are not currently responsible or liable for any other damages under general maritime law, the Jones Act or any other applicable law.” Id. The district court concluded that
[s]uch misleading contractual language, especially when reviewed by a layperson without the benefit of legal counsel, ere *119 ates the false impression that defendants are not subject to liability for any damages; if that is the case, then plaintiff, by signing the Agreement, is giving up nothing but obtains the wages he so badly needs. Put another way, defendants asked plaintiff to sign an agreement which purports to eliminate any prospect of liability.

Id.

The district court rejected Defendants’ argument that Harrington had ratified the Agreement by accepting the support payments, concluding that, because Harrington “was unaware of his legal rights and the unconscionable nature of the Agreement” when he accepted the payments, “there was no ratification.” Id.
Defendants appealed to this court.[1]
DISCUSSION
I. Legal Standards
We review de novo a district court’s denial of a motion to compel arbitration. Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995). “The determination of whether parties have contractually bound themselves to arbitrate a dispute [is] a determination involving interpretation of state law [and, hence] a legal conclusion also subject to de novo review.” Specht v. Netscape Commc’ns Corp., 306 F.3d 17, 26 (2d Cir.2002); accord Shann v. Dunk, 84 F.3d 73, 77 (2d Cir.1996). However, “[t]he findings upon which that conclusion is based ... are factual and thus may not be overturned unless clearly erroneous.” Specht, 306 F.3d at 26.
II. Is The Agreement Invalid As A Matter Of Law Under The FELA?
Harrington, assisted by amicus curiae American Association for Justice (the “AAJ”), argues that the Agreement is invalid as a matter of law because it violates the FELA as incorporated by the Jones Act. Specifically, Harrington and the AAJ contend that the Agreement eliminated “the seaman’s choice to try his case to a federal judge or jury, or a state court judge or jury,” and “grants the defendant ‘immunity’ from suit in all of these forums,” in violation of the FELA. Amicus Curiae Br. at 16. We disagree.
The Jones Act, which provides the basis for Harrington’s personal injury suit, states in relevant part:
A seaman injured in the course of employment ... may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.
46 U.S.C. § 30104. Interpreting this language, the Supreme Court held that “the Jones Act adopts ‘the entire judicially developed doctrine of liability’ under the [FELA].” Am. Dredging Co. v. Miller, 510 U.S. 443, 456, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (quoting Kernan v. Am. Dredging Co., 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958)).
Harrington and the AAJ argue that FELA §§ 5 and 6 render the Agreement unenforceable as a matter of law. FELA § 5 provides that “[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from *120 any liability created by this chapter, shall to that extent be void.” 45 U.S.C. § 55; see Duncan v. Thompson, 315 U.S. 1, 7, 62 S.Ct. 422, 86 L.Ed. 575 (1942) (holding that FELA § 5 applies to post-injury agreements).
FELA § 6 provides, in relevant part: Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.
45 U.S.C. § 56. FELA § 6 embodies “the plaintiffs right to bring a[ ] FELA action in state court.” Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 434, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); see Engel v. Davenport, 271 U.S. 33, 37-38, 46 S.Ct. 410, 70 L.Ed. 813 (1926). Although the non-removal language has been amended out of 45 U.S.C. § 56 since its enactment, similar language in 28 U.S.C. § 1445(a) applies to the FELA and renders Jones Act cases non-removable. See Cal. Pub. Employees’ Ret. Sys. v. Worldcom, Inc., 368 F.3d 86, 99 (2d Cir.2004).[2]
In Boyd v. Grand Trunk Western Railroad Co., the Supreme Court invoked FELA § 5 to invalidate an agreement limiting an injured party’s “right to bring the suit in any eligible forum,” a right which the Court found to be guaranteed by FELA § 6. 338 U.S. 263, 265, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (per curiam). In Boyd, the defendant railroad advanced Boyd money after Boyd was injured while working for the railroad. Id. at 263, 70 S.Ct. 26. In return, Boyd signed an agreement stating that if he brought suit, “such suit shall be commenced within the county or district where I resided at the time my injuries were sustained and not elsewhere.” Id. at 263-64, 70 S.Ct. 26. Boyd subsequently filed suit in Superior Court, Cook County, Illinois, which was not one of the stipulated venues. Id. at 264, 70 S.Ct. 26. When the railroad sought to enforce the venue agreement, the Supreme Court “agree[d] with those courts which have held that contracts limiting the choice of venue are void as conflicting with the [FELA].” Id. at 264-65, 70 S.Ct. 26. The Court concluded that the agreement at issue was unenforceable as a matter of law because
petitioner’s right to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of [FELA § 5].... The right to select the forum granted in [FELA § 6] is a substantial right. It would thwart the express purpose of the [FELA] to sanction defeat of that right by the device at bar.
Id. at 265-66, 70 S.Ct. 26.
Building upon Boyd, the AAJ and Harrington argue that arbitration agreements like the one at issue in this case deprive workers of their statutorily protected forum-selection rights and are invalid as a matter of law. They contend that “[t]he *121 agreement in the instant case is more egregious than that in Boyd because at least in Boyd the worker could still pick some federal or state courts in which to file his case.” Amicus Curiae Br. at 13.
Harrington and the AAJ read FELA § 6 far too broadly, and fail to properly distinguish Boyd from this case. Boyd “[was] not decided under the FAA, which ... reflects a liberal federal policy favoring arbitration agreements.” Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (internal quotation marks omitted); see also Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (“The [FAA] ... establishes a federal policy favoring arbitration.”) (internal quotation marks omitted). As the Fifth Circuit recognized in Terrebonne v. K-Sea Transportation Corp., 477 F.3d 271, 283 (5th Cir.2007), when Boyd was decided six decades earlier, “[t]here was no federal statute authorizing or providing for the enforcement of the type of agreement involved in Boyd.”
The FAA broadly applies to “maritime transaction^]” and “commerce,” and provides that “an agreement in writing to submit to arbitration an existing controversy arising out of’ maritime transactions or commerce “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.” 9 U.S.C. § 2. Although the FAA exempts from its coverage “contracts of employment of seamen,” id. § 1, the Supreme Court has strongly suggested that arbitration agreements such as the one at issue in this ease do not constitute “contracts of employment” where the arbitration agreement is “not contained” in a broader employment agreement between the parties, Gilmer, 500 U.S. at 25 n. 2, 111 S.Ct. 1647; see also Terrebonne, 477 F.3d at 279 (holding that the “maintenance and cure” provisions of an arbitration agreement, though “an intrinsic part of the employment relationship, [are] separate from the actual employment contract”) (emphasis in original); cf. Nunez v. Weeks Marine, Inc., No. 06-3777, 2007 WL 496855, at *3 n. 4 (E.D.La. Feb.13, 2007) (noting that, in Gilmer, the Supreme Court “d[id] not broadly define ‘employment contract’ as any contract that has some connection or relation to a party’s employment”). Moreover, the Supreme Court has recognized that if the term “contracts of employment” was read so broadly as to include independent arbitration agreements, then every seamen contract would be exempt from the FAA, thereby rendering “the separate exemption for ‘contracts of employment of seamen ... ’ pointless.” Circuit City Stores v. Adams, 532 U.S. 105, 113, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (quoting 9 U.S.C. § 1). Thus, “[h]ere, in contrast to Boyd, the FAA is involved and thus the issues ‘must be addressed with a healthy regard for the federal policy favoring arbitration.’ ” Terrebonne, 477 F.3d at 283 (quoting Gilmer, 500 U.S. at 26, 111 S.Ct. 1647) (emphasis in original).
In addition, § 6, by its terms and purpose, is inapplicable to arbitration agreements. Section 6 says nothing about arbitration agreements. Although “mandatory arbitration clauses are [currently] prevalent in a broad collection of contracts,” George Watts & Son, Inc. v. Tiffany & Co., 248 F.3d 577, 583 (7th Cir.2001), at the time § 6 was enacted, arbitration was not a commonly used mechanism “to adjudicate [employee] rights,” id.) indeed, § 6 was enacted in 1910, see Baltimore & O.R. Co. v. Kepner, 314 U.S. 44, 49, 62 S.Ct. 6, 86 L.Ed. 28 (1941), fifteen years before the FAA was enacted, see Circuit City Stores, 532 U.S. at 111, 121 S.Ct. 1302. FELA § 6 therefore cannot reasonably be read to include a blanket prohibition on seamen arbitration agreements when, at the time *122 of enactment, that provision did not contemplate, either in letter or spirit, the existence of an arbitral forum.
In fact, as the AAJ notes, § 6 was enacted by Congress, not in order to invalidate employee arbitration agreements, but “so that [FELA] suit[s] may be tried in a forum that was convenient for the worker.” Amicus Curiae Br. at 7. Without the inclusion of § 6, FELA (and hence, Jones Act) trials
[m]ay be at a place in a distant State from the home of the plaintiff, and may be a thousand miles or more from the place where the injury was occasioned. The extreme difficulty, if not impossibility, of a poor man who is injured while in railroad [or seaman] employ securing the attendance of the necessary witnesses at such a distant point makes the remedy given by the law of little avail under such circumstances.
Amicus Curiae Br. at 7-8 (quoting H.R. Rep. 513, 61st Cong.2d Sess. 6 (1910)); see also Kepner, 314 U.S. at 49-50, 62 S.Ct. 6; cf. Lewis v. Texaco Inc., 527 F.2d 921, 924 (2d Cir.1975) (describing the “solicitude” that should be afforded seamen in order “to safeguard seamen’s rights”) (internal quotation marks omitted).[3] Therefore, the purpose of § 6 is to ensure the existence of a practical and convenient forum to adjudicate the employee’s rights, not to ensure the existence of a particular type of forum.[4] Similarly, the “substantial right” referred to in Boyd was not the worker’s right to bring litigation in a judicial forum, but his right to have his claims adjudicated in an “eligible forum.” 338 U.S. at 265, 70 S.Ct. 26. An arbitral forum is not only an “eligible forum” where Harrington can adjudicate his rights; under the FAA, it is also a favored one. The Agreement does not deprive Harrington of his right to adjudicate his claims, it only shifts his right to adjudication to an arbitral forum, without geographical constraints.[5]
Thus, the AAJ’s reliance on cases such as Duncan, 315 U.S. 1, 62 S.Ct. 422, 86 *123 L.Ed. 575, Aaacon Auto Transport v. State Farm Mutual Automobile Insurance Co., 537 F.2d 648 (2d Cir.1976), Krenger v. Pennsylvania Railroad Co., 174 F.2d 556 (2d Cir.1949), and Nunez v. American Seafoods, 52 P.3d 720 (Alaska 2002), is unpersuasive. Those cases involved, not agreements to submit to an arbitral forum without geographic restriction, but agreements to adjudicate the worker’s claims in a specific court or geographic location, see Aaacon, 537 F.2d at 651 (arbitration must occur in New York City); Krenger, 174 F.2d at 557 (employee agreed to bring suit only “in a court sitting within either the state where the injuries were sustained or the state where the plaintiff was then living”); Nunez, 52 P.3d at 720 (employee agreed to bring suit only in federal court in Seattle), or in the case of Duncan, not to bring suit at all without satisfying certain “prerequisites,” see 315 U.S. at 3, 62 S.Ct. 422 (employee agreed not to “resort[] to litigation” without refunding monies previously advanced to employee).
Additionally, the AAJ suggests that the proviso in FELA § 5 bars seaman arbitration agreements. The proviso states:
Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.
45 U.S.C. § 55. The AAJ argues that this language “provides the defendant’s sole statutory remedy when it has made advances to an injured seaman” and “does not allow [it] to impose arbitration in exchange for the payments.” Amicus Curiae Br. at 18-19. This argument is also unpersuasive. Even assuming that Defendants are “common carriers” (an issue the AAJ does not address), this proviso does not provide that setting off benefits (or even advancing those benefits, before setting them off) renders any specific action, remedy, or forum exclusive. Rather, the proviso’s plain language simply ensures that common carriers can set off benefits under certain circumstances.
*124 In concluding that FELA §§ 5-6 and Boyd are inapplicable to seaman arbitration agreements, we align ourselves with all of the courts that have considered the issue. See, e.g., Terrebonne, 477 F.3d at 280-86; Nunez, 2007 WL 496855, at *6 (concluding that Boyd was inapplicable because “this case concerns an agreement to arbitrate and not a forum selection or venue clause”); Schreiber v. K-Sea Transp. Corp., 9 N.Y.3d 331, 338, 849 N.Y.S.2d 194, 879 N.E.2d 733 (2007) (“We reject the analogy because there is a factor here not present in Boyd: the federal policy favoring arbitration.”); In re Weeks Marine, Inc., 242 S.W.3d 849, 858 (Tex.App.2007) (questioning “the applicability of [Boyd ] to this case, in which the issues must be considered with a healthy regard for the federal policy favoring arbitration”). Thus, the Agreement is not unenforceable as a matter of law.
III. Is The Agreement Unconscionable?
Next, Defendants argue that the district court erred in concluding that the Agreement is unconscionable. For the following reasons, we agree.
A. Burden Of Proof
The district court assumed without deciding that Harrington bore the burden of proving that the Agreement was invalid. A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). However, the Supreme Court has also stated “that the burden is upon one who sets up a seaman’s release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights.” Garrett v. Moore-McCormack Co., 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942). In discussing this principle, we have noted that “[t]he sweep of the language in Garrett is so broad and the solicitude for seamen so plain that an argument for limiting traditional rule in admiralty regarding seamen’s releases cannot be sustained.” Lewis, 527 F.2d at 924. Harrington argues that Garrett’s burden-shifting rule should apply to this case because the Agreement constitutes a release of his right to a jury trial.
Harrington is incorrect. Garrett’s burden-shifting rule does not apply here because, as Defendants correctly note, the Agreement “is clearly not a release of rights, but an agreement to arbitrate those very rights.” Appellants’ Reply Br. at 9. Harrington’s substantive rights arise under the Jones Act. “By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.” Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Harrington fails to cite any case law to support his argument that Defendants must affirmatively prove the Agreement’s validity. Those cases Harrington cites, see Appellee Br. at 16-19, universally place the burden of proof on the party seeking to avoid arbitration, see, e.g., Nunez, 2007 WL 496855, at *8 n. 15 (“[T]he burden in Garrett concerned a burden of sustaining release of claims .... [Rjelease of claims is not an issue here.”); Schreiber, 9 N.Y.3d at 340, 849 N.Y.S.2d 194, 879 N.E.2d 733 (“[The] burden [for challenging the enforceability of an arbitration agreement] is not shifted simply because the objecting party is a seaman.”). Thus, Harrington bears the burden of proving that the Agreement was invalid under New Jersey law.
*125 B. Unconscionability
New Jersey “[c]ourts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability.”[6] Delta Funding Corp. v. Harris, 189 N.J. 28, 912 A.2d 104, 111 (2006) (citing Sitogum Holdings, 800 A.2d at 921-22). Procedural unconscionability includes “various inadequacies like age, literacy, and lack of sophistication,” while “[s]ubstantive unconscionability describes an exchange of promises that is so one-sided as to ‘shock the conscience’ of the court.” Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc., 357 F.Supp.2d 788, 801-02 (D.N.J.2005). Procedural unconscionability typically “does not, by itself, render [an] arbitration agreement unenforceable.” Delta Funding, 912 A.2d at 111; see also Sitogum Holdings, 800 A.2d at 921 n. 13 (“There do not appear to be any decisions where procedural unconscionability was present but not substantive unconscionability.”). As a result, for an agreement to be unconscionable under New Jersey law, it must include an “exchange of obligations so one-sided as to shock the court’s conscience.” Sitogum Holdings, 800 A.2d at 921; see also Travelodge Hotels, 357 F.Supp.2d at 802 (granting summary judgment where plaintiff failed to establish that “the material terms or promises in the [agreement] were substantively unconscionable”).
In finding the Agreement unconscionable, the district court focused primarily on the Agreement’s alleged procedural unconscionability, while finding substantive unconscionability solely based on the provision of the Agreement that stated that Defendants “are not currently responsible or liable for any other damages under general maritime law, the Jones Act or any other applicable law.” Harrington, 2007 WL 2693529, at *4-5. According to the district court, this language was substantively unconscionable because of its potential to “mislead[ ] ... a layperson [who is] without the benefit of legal counsel.” Id. at *5.
We disagree with the district court’s analysis. First, misleading language in an agreement is relevant to procedural, and not substantive, unconscionability, see Sitogum Holdings, 800 A.2d at 921 (explaining that procedural unconscionability includes, inter alia, an agreement’s “hidden or unduly complex contract terms”); thus, the instant provision could only be substantively unconscionable if, as a result of its operation, the Agreement “shock[ed] the court’s conscience,” id. The instant provision had no such effect— it “impose[d] no substantive obligation on” Harrington, Appellants’ Br. at 13, nor did it deprive Harrington of any rights. In *126 stead, the provision only noted that, at the time the Agreement was executed, Defendants were not “currently” liable for any damages, which was true because there had been no finding, or admission, of liability. To be sure, the provision could be read as indicating that there was no basis for liability, but the fact that a provision is susceptible to different interpretations does not, without more, make it substantively unconscionable. The remaining provisions of the Agreement were substantively reasonable: Defendants agreed to advance funds to Harrington and Harrington agreed to arbitrate his claims against Defendants. To find this bargain “so one-sided as to shock the court’s conscience,” Sitogum Holdings, 800 A.2d at 921, would contravene the “liberal federal policy favoring arbitration agreements,” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
Harrington sets forth two additional, unpersuasive reasons for affirming the district court’s judgment. First, Harrington’s contention that the Agreement is substantively unconscionable because the financial cost of arbitration essentially “extinguish[ed][his] ability to pursue” his claims, see Appellee Br. at 23, fails because the Rules of Employment for the American Association of Arbitration (“AAA”) expressly provide that “[t]he AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees,” and Harrington has not explained why the fees would not be deferred or reduced in his case. Moreover, Defendants have agreed to advance all arbitration fees, subject to later allocation by the arbitrator, and Harrington’s retainer agreement with his counsel provides for the advancement of all expenses by counsel, presumably including the cost of arbitration. Harrington has not established that the cost of arbitration would preclude him from arbitrating his claims.
Harrington’s argument that the Agreement was substantively unconscionable because it takes away his right to a trial by jury fails because courts may not “rely on the uniqueness of an agreement to arbitrate,” which necessarily waives jury trial, “as a basis for a state-law holding that enforcement would be unconscionable.” Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). It is well-settled that waivers of jury trial are fully enforceable under the FAA. See Gilmer, 500 U.S. at 26, 111 S.Ct. 1647; Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 480-81, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); Mitsubishi Motors, 473 U.S. at 628, 105 S.Ct. 3346.
Putting aside the question of whether the Agreement was procedurally unconscionable, the district court erred in concluding that the Agreement was substantively unconscionable. Because, under New Jersey law, an agreement must be substantively unconscionable in order to be voided for unconscionability, see Sitogum Holdings, 800 A.2d at 921 n. 13, the arbitration agreement entered into by Harrington cannot be voided on that basis.[7]
*127 IV. Harrington’s Remaining Contractual Defenses
Harrington also argued to the district court that the Agreement should be voided due to lack of mental capacity and intoxication. See Jennings v. Reed, 381 N.J.Super. 217, 885 A.2d 482, 488 (2005) (“[T]he longstanding rule is that where there is not the mental capacity to comprehend and understand, there is not the capacity to make a valid contract.”) (internal quotation marks omitted); Feighner v. Sauter, 259 N.J.Super. 583, 614 A.2d 1071, 1075 (1992) (noting that “intoxication” is one of the “usual grounds for rescission” of a contract). Defendants contend that “[t]he [district [c]ourt rejected sub silentio Plaintiffs defenses of lack of mental capacity and intoxication,” Appellants’ Br. at 10 n. 2, and that therefore we should also reject those defenses on appeal. We discern no evidence of this. The district court made no factual or legal findings with respect to Harrington’s lack of mental capacity and intoxication defenses, nor have those issues been briefed on appeal. Accordingly, we remand to the district court for a determination of the merits of Harrington’s remaining contractual defenses.
In addition, if the district court finds one or both of Harrington’s defenses to have merit, it will also be required to reconsider whether Harrington nonetheless ratified the Agreement. Ratification is “the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.” Martin Glennon, Inc. v. First Fidelity Bank, N.A., 279 N.J.Super. 48, 652 A.2d 199, 205 (1995) (internal quotation marks omitted). “Ratification requires intent to ratify plus full knowledge of all the material facts. Ratification may be express or implied, and intent may be inferred ... from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act.” Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 354 A.2d 291, 296 (1976) (internal citations omitted). Therefore, if the district court finds the Agreement voidable due to lack of mental capacity and/or intoxication, the court must then determine whether Harrington cashed Defendants’ checks, not only with the “intent to ratify” the Agreement, but with the “full knowledge” of the potential invalidity of the Agreement. Id.
CONCLUSION
For the foregoing reasons, the district court’s judgment is VACATED and the case REMANDED for proceedings consistent with this opinion.

. The defendants have withdrawn that part of their appeal that challenges the district court's rejection of their motion to dismiss Harrington’s in rem claim against the CANDACE.

. We assumed without discussion in World-Com that FELA § 6 applies to Jones Act cases, see 368 F.3d at 99, even though, when WorldCom was decided in 2004, the Jones Act included its own venue clause, see Terrebonne v. K-Sea Transp. Corp., 477 F.3d 271, 281 (5th Cir.2007) (citing 46 U.S.C.App. § 688(a)). However, in 2008, Congress amended the Jones Act by deleting its venue clause, see National Defense Authorization Act for Fiscal Year 2008, Pub.L. No. 110-181, 122 Stat. 3 (2008) (codified as amended at 46 U.S.C. § 30104), thereby confirming our assumption in WorldCom that § 6 applies to Jones Act cases.

. At best, it is unclear to what extent the "solicitude” afforded to seamen, which resulted in the extension of the FELA to seamen and the carve-out exception for seamen employment contracts from the FAA, still holds true today. See Ammar v. United States, 342 F.3d 133, 146 (2d Cir.2003) ("The modern reality is that most seamen are no longer 'friendless'; rather, they have gained strength through collectivity, and they are a well-organized work force with sophisticated leaders who constantly press for better working conditions, pay, and benefits, as well as increased job security. Thus, the need for judicial intervention to protect seamen has been substantially lessened.”).

. Contrary to the suggestion made in Judge Calabresi's dissent, this understanding of the purpose of § 6 is not "hard to understand” in light of the Supreme Court’s bar on state courts’ enjoining that state’s citizens from “suing railroad companies in the state courts of another state or in federal district court of another state.” Dissent of J. Calabresi at 136 (emphasis in original). The dissent’s puzzlement derives from the assumption that a plaintiff's home state is always the most convenient state for litigation. The Jones Act and FELA, however, recognize that this may not always be the case, and therefore explicitly allow a plaintiff to choose one of several states in which to initiate his suit. That choice is preserved by the arbitration clause in this case, leaving us with only a contractual preference for an arbitral forum-a preference with no implications for the plaintiff’s substantive rights. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

. Although purporting to discuss the relationship between the Jones Act and the later-enacted FAA, Judge Calabresi’s dissent provides no indication of a Congressional intent to exclude the venue provisions of the Jones Act and FELA from the plain language of the FAA. Nor does the dissent demonstrate any "inherent conflict between arbitration and the [Jones Act's] underlying purpose.” Shearson/American Exp., Inc. v. McMahon, 482 *123 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Although the dissent notes the benefits to Jones Act plaintiffs of choosing their forum, it provides no basis for concluding that the authors of either the Jones Act (as opposed to the authors of certain state workers' compensation provisions) or the FAA would have believed arbitration of disputes to be inherently in conflict with the goals of the Jones Act. This comes as no surprise in light of the Supreme Court’s ruling that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.” Mitsubishi Motors Corp., 473 U.S. at 628, 105 S.Ct. 3346.
Ultimately, Judge Calabresi tells us that "we should be reluctant to interpret the Jones Act and FELA to cede to the policy of the FAA,” because "the underlying rights for workers protected by [those Acts] have been judged non-amenable to private resolution by legislative bodies [i.e., the state legislatures of Montana, South Carolina, Georgia, Iowa, and Wisconsin] conferring analogous rights in the workers’ compensation context.” Dissent of J. Calabresi at [20]. The FAA’s policy of promoting arbitration, however, has been consistently applied to claims under statutes embodying similarly compelling rights and interests. See Shearson/American Exp., 482 U.S. at 242, 107 S.Ct. 2332 (applying the FAA’s provisions to a civil RICO claim); see also, Mitsubishi, 473 U.S. at 635, 105 S.Ct. 3346 ("The importance of the private damages remedy [under the Clayton Act, 15 U.S.C. § 15], however, does not compel the conclusion that it may not be sought outside an American court.”).

. The parties do not challenge the district court’s application of New Jersey law to determine the validity of the Agreement. Nevertheless, Harrington argues that, on the basis of Garrett, a New Jersey state court would not apply New Jersey common law in this case, but instead would apply "federal maritime law” to determine the validity of the Agreement. See Appellee Br. at 19-20. Harrington’s argument appears to be an oblique reference to the "reverse-Erie doctrine,” which "requires that the substantive remedies afforded by” state courts in maritime cases "conform to governing federal maritime standards.” Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 223, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). We reject this cursory argument, both because Harrington cites no case law to support it, and because, as previously established, Garrett is inapposite to this case. Moreover, given maritime law’s silence on this particular issue, the district court correctly applied New Jersey common law principles to determine the validity of the Agreement. See, e.g., Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 n. 6 (2d Cir.2006).

. We note that Judge Calabresi’s dissent agrees with our understanding that New Jersey requires some degree of substantive unconscionability in order to void a contract provision. Dissent of J. Calabresi at 130. Judge Calabresi would, however, permit a finding of substantive unconscionability under New Jersey law without a determination that the provision at issue "shocks the conscience.” Id. at 130 ("I do not believe that conscience-shocking terms are in practice required to find unconscionability in New Jersey in circumstances like those before us.”). Following the standards set forth by the Supreme Court of New Jersey, we require the identification of some "exchange of obligations so one-sided as to shock the court's conscience” before voiding a contract provi *127 sion. Sitogum Holdings, 800 A.2d at 921. Finding no such one-sided obligation, the arbitration provision cannot be voided under New Jersey law.