[879 NE2d 733, 849 NYS2d 194]

In the Matter of NICHOLAS SCHREIBER, Respondent-Appellant, v
  K-SEA TRANSPORTATION CORP. et al., Appellants-
  Respondents.

Argued October 10, 2007; decided November 27, 2007

## POINTS OF COUNSEL

*Freehill, Hogan & Mahar,* New York City (*Thomas M. Canevari* and *Michael C. Elliott* of counsel), for appellants-respondents. The arbitration agreement between Nicholas Schreiber and K-Sea Transportation Corp. was valid under the Federal Arbitration Act, thus the burden to avoid arbitration rests with the party challenging arbitration. (*State of New York v Oneida Indian Nation of N.Y.,* 90 F3d 58; *Joseph Muller Corp. Zurich v Commonwealth Petrochemicals, Inc.,* 334 F Supp 1013; *Shearson/American Express Inc. v McMahon,* 482 US 220; *Terrebonne v K-Sea Transp. Corp.,* 477 F3d 271; *Green Tree Financial Corp.-Ala. v Randolph,* 531 US 79; *National Iranian Oil Co. v Ashland Oil, Inc.,* 817 F2d 326; *DeGraziano v Verizon Communications, Inc.,* 325 F Supp 2d 238; *Genesco, Inc. v T. Kakiuchi & Co., Ltd.,* 815 F2d 840; *Gilmer v Interstate/Johnson Lane Corp.,* 500 US 20.)

*Law Offices of Sanford F. Young, P.C.,* New York City (*Sanford F. Young* of counsel), and *Law Office of Steven Thaler, P.C.* (*Steven Thaler* of counsel) for respondent-appellant. I. The claims arbitration agreement is unenforceable as a matter of law. (*Chandris, Inc. v Latsis,* 515 US 347; *American Dredging Co. v Miller,* 510 US 443; *O'Hara v Weeks Mar., Inc.,* 294 F3d 55; *Fitzgerald v United States Lines Co.,* 374 US 16; *Circuit City Stores, Inc. v Adams,* 532 US 105; *Jacob v City of New York,* 315 US 752; *Fisher v Nichols,* 81 F3d 319; *Aguilar v Standard Oil Co. of N. J.,* 318 US 724; *Nasser v CSX Lines, LLC,* 191 F Supp 2d 307; *Brinson v Linda Rose Joint Venture,* 53 F3d 1044.) II. The Supreme Court correctly found that Nicholas Schreiber unknowingly assumed "a financial burden disproportionate to his ability to pay." (*Ball v SFX Broadcasting, Inc.,* 165 F Supp 2d 230; *Res v Masterworks Dev. Corp.,* 5 Misc 3d 1003[A], 2004 NY Slip Op 51169[U]; *Parilla v IAP Worldwide Servs., VI, Inc.,* 368 F3d 269; *Shankle v B-G Maintenance Mgt. of Colo., Inc.,* 163 F3d 1230; *Phillips v Associates Home Equity Servs., Inc.,* 179 F Supp 2d 840; *Perez v Hospitality Ventures-Denver LLC,* 245 F

Supp 2d 1172; *Torrance v Aames Funding Corp.*, 242 F Supp 2d 862; *Cooper v MRM Inv. Co.*, 199 F Supp 2d 771; *Green Tree Financial Corp.-Ala. v Randolph*, 531 US 79; *Garrett v Moore-McCormack Co.*, 317 US 239.) III. The Supreme Court's decision should be reinstated or, alternatively, the matter remanded per the Appellate Division's decision.

*Friedman & James LLP,* New York City (*John P. James* of counsel), *James P. Jacobsen,* Seattle, Washington, *Kathleen Flynn Peterson,* Minneapolis, Minnesota, and *Ross Diamond,* Mobile, Alabama, for American Association for Justice, amicus curiae. I. The Federal Employers' Liability Act applies to this case. (*American Dredging Co. v Miller,* 510 US 443; *Cox v Roth,* 348 US 207; *Kernan v American Dredging Co.,* 355 US 426; *Garrett v Moore-McCormack Co.,* 317 US 239.) II. The arbitration agreement is a "devise" intended to eliminate the seaman's statutory rights to file his case in state or federal court and is therefore void. (*Engel v Davenport,* 271 US 33; *Second Employers' Liability Cases,* 223 US 1; *Burnett v New York Central R. Co.,* 380 US 424; *Philadelphia, B. & W. R. Co. v Schubert,* 224 US 603; *Duncan v Thompson,* 315 US 1; *Boyd v Grand Trunk Western R. Co.,* 338 US 263.) III. The Alaska Supreme Court has recently correctly applied *Boyd v Grand Trunk Western R. Co.* (338 US 263 [1949]). (*Brooks v Maersk Line, Ltd.,* 396 F Supp 2d 711.) IV. The United States Court of Appeals case relied upon by the employer was wrongly decided and is not binding upon this Court. (*Terrebonne v K-Sea Transp. Corp.,* 477 F3d 271; *Boyd v Grand Trunk Western R. Co.,* 338 US 263; *Miles v Illinois Cent. R. Co.,* 315 US 698; *Bainbridge v Merchants & Miners Transp. Co.,* 287 US 278; *Akerly v New York Cent. R.R. Co.,* 168 F2d 812; *Brooklyn Savings Bank v O'Neil,* 324 US 697.)

## OPINION OF THE COURT

SMITH, J.

The issue is the validity of a seaman's agreement to arbitrate his Jones Act claim against his employer, where the agreement was made after the seaman was injured. We hold, as did the Appellate Division, that post-injury arbitration agreements are not prohibited, but that a hearing should be held to decide whether this arbitration agreement is enforceable. We disagree with the Appellate Division as to the burden of proof at the hearing; the burden should be on the party trying to invalidate the arbitration agreement.

## Facts and Procedural History

Nicholas Schreiber was injured while working aboard the tug *Tasman Sea*, owned by K-Sea Transportation Corp. Under admiralty law, Schreiber was entitled to "maintenance" from K-Sea (payments sufficient to provide him with food and lodging) while his injury prevented him from working. He was also entitled to sue K-Sea under the Jones Act (46 USC § 30104) if K-Sea's negligence caused his injury. K-Sea, pursuant to its interpretation of its collective bargaining agreement with Schreiber's union, began making maintenance payments to him of $15 per day.

Several weeks after the accident, K-Sea's claims manager, Alton Peralta, called Schreiber and made a proposal: K-Sea would increase its payments to two thirds of Schreiber's regular wage, as an advance against settlement of any claims by Schreiber based on his injury, if Schreiber would agree to arbitrate those claims. Schreiber agreed, and Peralta sent him a written agreement with a short cover letter. The cover letter explained: "arbitration is a private process, and the outcome will be decided by one or more arbitrators, not by a jury." The cover letter also told Schreiber, in bold letters: "You are not obligated to sign the Agreement. You will continue to receive $15/day as maintenance, and medical cure at the Company's expense until you are fit for duty and/or reach maximum medical improvement, whether you sign the Agreement or not."

Schreiber signed the agreement. It provided that he and K-Sea agreed to arbitrate all claims arising out of his injury under the rules of the American Arbitration Association (AAA). The agreement also provided: "Any filing fee, up to $750.00 and any deposit for compensation of the arbitrators shall be advanced by K-Sea, subject to subsequent allocation."

At the time of the agreement, Schreiber apparently expected to recover well from his injury. But the injury worsened, leaving him confined to a walking boot and unlikely ever to return to working at sea. Some 17 months after the injury, Schreiber sued K-Sea in Supreme Court, asserting Jones Act and other claims. K-Sea filed a demand for arbitration with the AAA, and sent the AAA a check for $750 "as K-Sea's portion of the filing fee." Its letter told the AAA that "the remainder of the filing fee is to be provided by Mr. Schreiber." The AAA responded by telling the parties that, since the amount of the claim was not stated in the demand, the minimum filing fee would be $10,000.

Schreiber petitioned Supreme Court to stay arbitration, and K-Sea cross-moved to compel arbitration. Supreme Court granted Schreiber's petition. It rejected Schreiber's claim that the Federal Arbitration Act (FAA) rendered the agreement unenforceable, but held that K-Sea had failed to prove "that there was no deception or coercion on its part, and that Schreiber understood his obligations under the agreement" (2004 NY Slip Op 30151[U], *8). The Appellate Division, one Justice dissenting in part, reversed and directed a hearing on whether the agreement was enforceable. The Appellate Division majority concluded, as had Supreme Court, that K-Sea had an "obligation to show that the arbitration agreement is equitable," but found the issue could not be resolved without a hearing (30 AD3d 101, 110 [2006]). Justice Andrias, dissenting, said the burden should be on Schreiber to demonstrate the invalidity of the arbitration agreement and concluded that, since he had not met that burden, arbitration should be compelled, though Schreiber should not be required to pay the $9,250 balance of the filing fee. The Appellate Division granted both parties leave to appeal.

The three opinions below reached three different conclusions, and we reach a fourth: There should be a hearing, at which the burden should be on Schreiber to show that the arbitration agreement is unenforceable. Though the Appellate Division erred in allocating the burden of proof, its order simply remands the case for a hearing, and we therefore affirm that order.

## Discussion

Schreiber argues that the FAA forbids enforcement of the arbitration agreement; that the Federal Employers' Liability Act (FELA) also forbids it; and that, even if enforcement of the arbitration agreement is not barred by statute, it is barred by his status as a "ward of the admiralty." We reject all three arguments, but decide that the facts of this case warrant ordering a hearing on the agreement's enforceability.

## I

Section 2 of the FAA (9 USC § 2) provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or

the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

This section reflects a federal policy favoring the arbitration of disputes (*Moses H. Cone Memorial Hospital v Mercury Constr. Corp.*, 460 US 1, 24-25 [1983]). The policy is applicable even to claims arising under protective statutes like the Jones Act (*see Gilmer v Interstate/Johnson Lane Corp.*, 500 US 20, 26 [1991] ["statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA . . . (because by) agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum" (internal quotation marks and citation omitted)]; *Fletcher v Kidder, Peabody & Co.*, 81 NY2d 623, 635 [1993]). Section 1 of the FAA (9 USC § 1), however, excludes from the scope of the FAA "contracts of employment of seamen." Schreiber argues that the arbitration agreement between him and K-Sea is part of his contract of employment and is therefore excluded from the FAA's coverage. He also argues that the exclusion implies a prohibition—i.e., that an arbitration agreement excluded from the FAA's coverage is unenforceable, even if it would otherwise be enforceable under state law.

We need not decide whether Schreiber is right about the enforceability of agreements excluded from the FAA by section 1 (*see O'Dean v Tropicana Cruises Intl. Inc.*, 1999 WL 335381, *1-2, 1999 US Dist LEXIS 7751, *3-4 [SD NY 1999] [holding an excluded agreement not inherently unenforceable]) because the agreement at issue here is not excluded from the FAA. It is not a "contract of employment"; it is a separate agreement, made after K-Sea had employed Schreiber, at a time when the occasion for arbitration—Schreiber's injury—already existed. We agree with all other courts to consider the question that an agreement like this is within the coverage of the FAA (*see Terrebonne v K-Sea Transp. Corp.*, 477 F3d 271, 278-280 [5th Cir 2007]; *Nunez v Weeks Mar., Inc.*, 2007 WL 496855, *1-5, 2007 US Dist LEXIS 10807, *4-19 [ED La 2007]; *Barbieri v K-Sea Transp. Corp.*, 2006 WL 3751215, *7-8, 2006 US Dist LEXIS 91565, *21-26 [ED NY 2006]; *Endriss v Eklof Mar. Corp.*, 1998

WL 1085911, *4, 1998 US Dist LEXIS 23231, *12-16 [SD NY 1998]).

## II

The FELA is relevant here because the Jones Act says that "[l]aws of the United States regulating recovery for personal injury to . . . a railway employee apply" to a Jones Act claim (46 USC § 30104 [a]). Section 5 of the FELA says that "[a]ny contract . . . the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void" (45 USC § 55). On its face, this statute seems to pose no problem here, because K-Sea's contract with Schreiber does not purport to "exempt" K-Sea from "liability," but only to require that Schreiber's claim be arbitrated. In *Boyd v Grand Trunk Western R. Co.* (338 US 263 [1949]), however, the Supreme Court gave a broad reading to section 5 of the FELA, holding that an agreement limiting an employee's choice of forum to a state or federal court in Michigan was void, on the theory that being subject to suit in a court of the employee's choice was part of the "liability created." Schreiber argues that the arbitration clause here is similar to the venue-selection clause in *Boyd*, since both clauses limit litigation to a particular forum.

We reject the analogy because there is a factor here not present in *Boyd*: the federal policy favoring arbitration. To hold, as Schreiber urges, that any agreement to arbitrate a Jones Act claim is void would contradict that policy. We therefore conclude that an arbitration agreement is not a forbidden exemption from Jones Act liability. Again, the other courts to consider this question have reached the same conclusion (*Terrebonne*, 477 F3d at 280-286; *Nunez*, 2007 WL 496855, *5-6, 2007 US Dist LEXIS 10807, *20-22).

## III

As an alternative to his argument that federal statutes render the arbitration agreement void, Schreiber suggests that, because seamen are "wards of the admiralty," a contract between a seaman and his employer should be treated in the same way as, for example, a contract between a beneficiary and a trustee—i.e., that such a contract is invalid unless it is shown to be fair to the seaman and untainted by deception, duress or any other factor that might bar its enforcement in equity. The "ward of the admiralty" doctrine was stated by Justice Story in *Harden v Gordon* (11 F Cas 480, 485 [D Me 1823]) in this way:

"[Seamen] are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees. They are considered as placed under the dominion and influence of men, who have naturally acquired a mastery over them; and as they have little of the foresight and caution belonging to persons trained in other pursuits of life, the most rigid scrutiny is instituted into the terms of every contract, in which they engage. If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable. . . . And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen."

In *Garrett v Moore-McCormack Co.* (317 US 239, 247 [1942]), Justice Black quoted some of the above words of Justice Story, and added:

"The analogy . . . between seamen's contracts and those of fiduciaries and beneficiaries remains, under the prevailing rule treating seamen as wards of admiralty, a close one. Whether the transaction under consideration is a contract, sale, or gift between guardian and ward or between trustee and cestui, the burden of proving its validity is on the fiduciary. He must affirmatively show that no advantage has been taken; and his burden is particularly heavy where there has been inadequacy of consideration."

K-Sea argues, in substance, that Justice Story's words of 1823, and even Justice Black's of 1942, are out of date. And indeed, there is something antiquated in the idea that seamen are less capable than other people of making contracts for themselves.

Surely most seamen today are as intelligent and responsible as most others; the record shows that Schreiber himself writes lucid English, uses a computer, and has been involved in some business ventures. The federal courts have not, however, abandoned the "ward of the admiralty" doctrine, though it has shown some signs of erosion (*see Brinson v Linda Rose Joint Venture*, 53 F3d 1044, 1048 [9th Cir 1995]).

The issue here is not the vitality of the "ward of the admiralty" doctrine in general, but whether it outweighs the policy favoring arbitration. We hold that it does not. Section 2 of the FAA says that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 USC § 2). The implication is that the party challenging the enforceability of an arbitration agreement has the burden of showing "grounds" for its "revocation." That burden is not shifted simply because the objecting party is a seaman. Schreiber is bound by his agreement with K-Sea unless he can show that fraud, unconscionability or some other defect justifies invalidating it.

IV

Though we agree with Justice Andrias, the dissenter in the Appellate Division, that the agreement here is, like other arbitration agreements, presumptively valid, we do not agree with Justice Andrias's conclusion that the result should be to compel arbitration without an evidentiary hearing. While Schreiber must bear the burden of proving the agreement invalid, the record does not conclusively show that he cannot do so.

There is no evidence that Peralta misled or intimidated Schreiber in their telephone conversation, and the cover letter he sent to Schreiber with the proposed agreement clearly explains the choice Schreiber had to make—including his choice, if he signed the agreement, to give up his right to a jury trial. There is, however, one troubling aspect of the agreement itself: the statement that K-Sea would advance any filing fee "up to $750.00." Anyone reading this statement in context would infer that the fee was likely to be around $750 or less—but the fee actually demanded by the AAA was $10,000. If K-Sea expected the fee to be so far in excess of the one mentioned in the agreement—and so far in excess of what most seamen can afford—a factfinder might conclude that K-Sea deceived Schreiber into signing. If Supreme Court finds that K-Sea intentionally misled

Schreiber, and that if correctly informed he would not have agreed to arbitration, the arbitration agreement should be set aside. We imply no prejudgment of the issue: a hearing may well show that K-Sea acted in complete good faith. But there should be a hearing, at which the question is answered one way or the other (*see Barbieri*, 2006 WL 3751215, \*9, 2006 US Dist LEXIS 91565, \*29-32 [reaching a similar conclusion on almost identical facts]).

If Schreiber fails to show at the hearing that K-Sea obtained his agreement by intentionally deceiving him, Supreme Court should compel arbitration. Even in that event, however, Schreiber should not be compelled to bear costs which would effectively preclude him from pursuing his claim (*see Green Tree Financial Corp.-Ala. v Randolph*, 531 US 79, 92 [2000]). Thus, any order compelling arbitration should be conditioned on K-Sea's agreement to bear any costs not waived by the AAA, subject later to reallocation of those costs by the arbitrator.

Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order affirmed, etc.