**IN RE OSG SHIP MANAGEMENT, INC., Relator**

**NO. 14–16–00240–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed December 29, 2016.

Robert L. Klawetter, Christina K. Schovajsa, Houston, TX, for Relator.

Kurt B. Arnold, Houston, TX, for Real Party in Interest.

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

J. Brett Busby, Justice

Relator OSG Ship Management, Inc. filed a petition for writ of mandamus in this Court, seeking enforcement of a fo-

rum-selection clause in an agreement it made with one of its seamen after he was injured. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, relator asks us to compel the Honorable Elaine Palmer, presiding judge of the 215th District Court of Harris County, to set aside her March 7, 2016 order denying OSG's motion to dismiss and sign an order granting the motion to dismiss in the underlying case asserting personal injury claims under the Jones Act.

We conclude that the agreement at issue contains a clause selecting a Florida forum, that it is supported by consideration and not invalid under the Federal Employers Liability Act or on public policy grounds, and that its execution without the involvement of a union representative did not violate the parties' collective bargaining agreement. We conditionally grant the petition.

## BACKGROUND

Rasheed Lawal sustained an injury on July 19, 2015, in the course and scope of his employment as a steward with OSG on the *M/T Overseas Anacortes*, a products tanker operating in the Bahamas. Lawal notified the vessel's master of his injury the next day, and he was immediately sent ashore for medical attention. Lawal was evaluated and then returned to the vessel. After a follow-up medical appointment three days later, Lawal was declared unfit for duty.

Lawal was employed under a collective bargaining agreement ("CBA") between the Seafarers International Union, of which he was a member, and the American Maritime Association, of which OSG was a member. Pursuant to the CBA, OSG commenced maintenance and cure payments of $16 per day to Lawal the day after he signed off the vessel.[1] On July 28, 2015, OSG wrote Lawal that it was offering him the opportunity to participate in a Post Incident Payment Plan. Under the Plan, OSG would pay Lawal $2,500 per month until Lawal reached maximum medical cure or the amount paid totaled $10,000.[2] In exchange for participating in the Plan, Lawal agreed to limit the forum in which Lawal could file suit to a federal or state court located in Hillsborough County, Florida. OSG explained to Lawal that "[y]ou are not required to participate in the Plan and you will not suffer any adverse employment actions by OSG if you decide not to participate in the Plan."

Lawal signed the Post Incident Payment Plan Agreement ("PPA") on August 3, 2015, which provided, in its entirety:

I, Rasheed Lawal, request that OSG Ship Management, Inc. allow me to participate in the Plan. I agree to the terms and conditions of participating in the Plan as described in the above correspondence, including the material term that any claim, dispute or controversy whatsoever that arises from my alleged July 19, 2015 injury aboard the M/T

1. Section 14 of the CBA provides for maintenance and cure as follows:
 When a member of the Unlicensed Personnel is entitled to maintenance and cure under Maritime Law, he shall be paid maintenance at the rate of sixteen dollars ($16.00) per day for each day or part thereof of entitlement. The payment due hereunder shall be paid to the man weekly. This payment shall be made regardless of wheth-

er he has or has not retained an attorney, filed a claim for damages, or taken any other steps to that end and irrespective of any insurance arrangements in effect between the Company and any insurer.

2. The cover letter acknowledged that "Seam[e]n that sustain an injury or illness while in the service of the vessel are entitled to maintenance, cure, and unearned wages."

OVERSEAS ANACORTES shall be litigated, if at all, in a federal court located in Hillsborough County, Florida to the exclusion of the courts of any other country, state, county, or city. In the event that a federal court lacks jurisdiction, then I agree to litigate any claim, dispute or controversy whatsoever that arises from my alleged July 19, 2015 injury in a state court of competent jurisdiction located in Hillsborough County, Florida to the exclusion of the courts of any other country, state, county, or city.

For the period beginning on August 1, 2015, and ending November 20, 2015, Lawal received a total of $10,000. Of this amount, $1,952 represented daily maintenance payments of $16 for 122 days.

Lawal filed suit against OSG in the 215th District Court in Harris County, in November 2015, seeking personal injury damages under the Jones Act[3] and general maritime law in connection with the July 2015 incident. OSG filed a motion to dismiss the suit based on the forum-selection agreement contained in the PPA, which required Lawal to file suit in a federal or state court located in Hillsborough County, Florida. In a response and sur-response, Lawal argued that the PPA contained an unenforceable venue-selection agreement, the PPA is void for lack of consideration, enforcement of the PPA would be unreasonable because Lawal was not represented by legal counsel at the time he signed the PPA, and the PPA is not enforceable because a union representative did not represent Lawal at the time he signed the PPA.

The trial court held a hearing on OSG's motion to dismiss and denied the motion. OSG filed this petition shortly thereafter.

**3.** *See* 46 U.S.C. § 30140 (providing seamen with remedy for personal injury claims against employers).

## ANALYSIS

In its petition, OSG contends that the trial court abused its discretion by denying its motion to dismiss because the PPA is a forum-selection rather than a venue-selection agreement, it is supported by consideration, attorney representation was not necessary under the Texas Arbitration Act because that Act does not apply to forum-selection clauses, and union representation was not necessary because the PPA is not part of an employment agreement. Lawal responds with two additional arguments. First, Lawal asserts that the PPA is void because the Federal Employers Liability Act,[4] which is incorporated into the Jones Act, prohibits forum-selection clauses between seamen and their employers. Second, Lawal argues that attorney representation was required because releases by seamen are subject to careful scrutiny. We address these issues below.

## I. Standard of review

 To be entitled to mandamus relief, a relator must demonstrate that (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). A trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause. *In re Lisa Laser*

**4.** 45 U.S.C. §§ 51–60.

USA, Inc., 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding) (per curiam).

■ An appellate remedy is inadequate when a trial court improperly refuses to enforce a forum-selection clause because allowing the trial to go forward will vitiate and render illusory the subject matter of an appeal, i.e., trial in the proper forum. *Id.*; *see also In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 & n.2 (Tex. 2016) (orig. proceeding) ("[W]e have repeatedly held that appeal is inadequate to remedy the erroneous denial of such a motion [to dismiss based on a forum-selection clause]."). Thus, mandamus relief is available to enforce an unambiguous forum-selection clause. *Lisa Laser USA, Inc.*, 310 S.W.3d at 883.

## II. The PPA includes a forum-selection clause.

■ The parties initially dispute whether the PPA includes a forum-selection clause. "The distinction between a forum selection clause and a venue selection clause is critical." *Lui v. Cici Enters. L.P.*, No. 14–05–00827–CV, 2007 WL 43816, at *2 (Tex. App.–Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op.). Forum-selection clauses are presumptively valid unless shown to be unreasonable, and they may be enforced in Texas courts through a motion to dismiss. *Id.*; *see also In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding) (per curiam). Venue, in contrast, cannot be selected by private contract unless provided by statute. *Lui*, 2007 WL 43816, at *2. Moreover, unless venue is challenged by a motion to transfer venue filed before or concurrently with the defendant's answer, any objection to venue is waived. *Id.*

■ Forum refers to the jurisdiction, generally a nation or state, where suit may be brought. *Id.*; *see also Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 627 (Tex. App.–Texarkana 2008, pet. denied) (" 'Forum' generally refers to a · sovereign state."). Venue concerns the geographic location within the forum where the case may be tried. *In re Hannah*, 431 S.W.3d 801, 806 (Tex. App.–Houston [14th Dist.] 2014, orig. proceeding) (per curiam). "Venue may and generally does refer to a particular county, but may also refer to a particular court." *Gordon v. Jones*, 196 S.W.3d 376, 383 (Tex. App.–Houston [1st Dist.] 2006, no pet.).

■ Lawal contends that the PPA includes a venue-selection clause because it designates "a federal court located in Hillsborough County, Florida" or, alternatively, "a state court of competent jurisdiction located in Hillsborough County, Florida." This contention does not end our inquiry, however, because not all agreements can be neatly labeled as selecting either a forum or a venue. Some agreements select both. Here, the choice by Lawal and OSG to select a county in the State of Florida as the proper venue necessarily implies that they chose the State of Florida as the forum for a suit arising from Lawal's injury. *See In re Morice*, No. 01–11–00541–CV, 2011 WL 4101141, at *1 (Tex. App.–Houston [1st Dist.] Sept. 15, 2011, orig. proceeding) (mem. op.) ("While [the parties] did not expressly select the State of New York as the forum in which such actions shall be tried, we conclude that their selection of a New York county as the proper venue for suits arising from the lease necessarily implies their selection of the State of New York as the forum for any such suit."); *see also Lisa Laser USA, Inc.*, 310 S.W.3d at 882 (addressing the following provision as a forum-selection clause: "[t]he California state [or federal] courts of Alameda County, California ... will have exclusive juris-

diction arising out of this agreement, and [HealthTronics] hereby consents to the jurisdiction of such courts"). Accordingly, we conclude that the PPA also includes a forum-selection clause.[5]

Lawal points out that the Texas Legislature has given injured seamen the right to bring Jones Act claims in certain statutorily defined counties. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.0181 (West Supp. 2015). But this statute simply defines the counties that are mandatory venues for Jones Act claims properly brought in Texas state courts. Because the parties to the PPA selected a Florida forum, section 15.0181 does not apply to this case.[6]

## III. Consideration supports the PPA.

Lawal also asserts that no consideration supports the PPA because the CBA already required OSG to provide him maintenance and cure. To be enforceable, a contract must be supported by consideration. *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.–Houston [14th Dist.] 2011, no pet.). Consideration may consist of a benefit that accrues to one party or, alternatively, a detriment incurred by the other party. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991); *Nuszen v. Burton*, 494 S.W.3d 799, 806 (Tex. App.–Houston [14th Dist.] 2016, no pet.). "A promise to fulfill a pre-existing obligation cannot serve as new consideration for an amendment to a contract." *Dupree v. Boniuk Interests, Ltd.*, 472 S.W.3d 355, 368 (Tex. App.–Houston [1st Dist.] 2015, no pet.); *see also McCoy v. Alden Indus., Inc.*, 469 S.W.3d 716, 729 (Tex. App.–Fort Worth 2015, no pet.) (holding that insufficient consideration

supports a contract modification where a party agrees to do what he was bound to do by an original contract).

"There is an ancient duty of a vessel to provide maintenance and cure to a seaman who is injured or falls ill while in the service of the ship." *Springborn v. Am. Commercial Barge Lines, Inc.*, 767 F.2d 89, 94 (5th Cir. 1985). "Maintenance is a daily stipend for living expenses, [and] cure is the payment of medical expenses." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (citation and internal quotations omitted). "Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Id.* (citation and internal quotations omitted). The duty to provide maintenance and cure is unqualified: it cannot be contracted away by seamen, does not depend on the fault of the employer, and is not reduced due to the seaman's contributory negligence. *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 725–26 (5th Cir. 2013).

In this case, the CBA set the rate of maintenance at $16 per day. OSG began making maintenance and cure payments to Lawal effective in late July 2015 and has continued (through at least January 2016) to pay maintenance during the pendency of the litigation.

In early August 2015, Lawal signed the PPA, which obligated OSG to pay Lawal $2,500 each month for four months (August through November 2015) until the total payments reached $10,000 or Lawal reached maximum medical cure, whichever

---

**5.** In order to resolve this mandamus petition, we need not decide whether the portion of the PPA selecting Hillsborough County as the exclusive venue within Florida is enforceable.

**6.** *See Great Lakes Dredge & Dock Co. v. Larrisquitu*, Civ. A. Nos. H–06–3489, 2007 WL 2330187, at *22 (S.D. Tex. Aug. 15, 2007) (expressing doubt that section 15.0181 "would trump Texas's policy of presuming forum-selection clauses valid").

occurred first. The payments would be reduced "at the time of payment for any payments or benefits that you receive from one or more of the following sources: general maritime law (e.g., maintenance), any state laws, federal social security disability or retirement benefits, any other third-party payment (excluding your personal insurance), any other government-sponsored programs, and any other company provided policy and plans." Thus, OSG was entitled to reduce the $2,500 monthly payment by $16 per day for the maintenance OSG was already obligated to pay pursuant to maritime law and the CBA. The Plan further provided that, in the event of litigation, any favorable judgment Lawal received would be set off and reduced by the Plan payments.

There are many reported cases addressing an employer's agreement to pay an injured seaman an advance against a future settlement or judgment in exchange for the seaman's agreement to resolve any disputes in a particular forum, and courts often enforce such agreements.[7] Although the PPA chooses a court rather than an arbitral forum, it is otherwise typical of such agreements, and we conclude it does not fail for lack of consideration. In August through November 2015 (122 days), Lawal was already entitled to receive maintenance payments of $1,952 under the CBA, assuming he did not reach maximum medical improvement earlier. Instead, OSG promised to pay him $10,000 during that same period under the PPA. Even if OSG had exercised its right to offset the maintenance received against its PPA payments, it would still have paid Lawal more than $8,000 under the PPA that he was not otherwise entitled to receive in August through November 2015.[8] OSG's promise

7. *See Harrington v. Atl. Sounding Co.*, 602 F.3d 113 (2d Cir. 2010) (rejecting certain defenses to post-injury arbitration agreement under which defendant agreed to pay a percentage of gross wages as advance against settlement until plaintiff was declared fit for duty and/or maximum medical improvement, whichever occurred first, and further credited the advance against any settlement the plaintiff might reach with the defendant or against any further arbitration award the plaintiff might receive, but remanding for hearing on defenses of lack of mental capacity or intoxication); *Barbieri v. K–Sea Transp. Corp.*, 566 F.Supp.2d 187 (E.D.N.Y. 2008) (enforcing post-injury arbitration agreement under which plaintiff agreed to arbitrate his claims arising out of the incident in exchange for defendant paying him two-thirds of his average net weekly wage as advance against settlement, but requiring employer to pay costs of arbitration); *Matter of Schreiber v. K–Sea Transp. Corp.*, 9 N.Y.3d 331, 849 N.Y.S.2d 194, 879 N.E.2d 733 (2007) (rejecting certain challenges to post-injury arbitration agreement under which plaintiff agreed to arbitrate his claims arising out of the incident in exchange for defendant paying him two-thirds of his average net weekly wage as advance against settlement, but remanding

for hearing on whether defendant deceived plaintiff into signing); *In re Weeks Marine, Inc.*, 242 S.W.3d 849 (Tex. App.–Houston [14th Dist.] 2007, orig. proceeding [mand. denied] ) (rejecting certain challenges to post-injury arbitration agreement under which plaintiff agreed to arbitrate any claims arising from his injury in exchange for defendant's agreement to advance certain sums to plaintiff; advances were to be credited against any recovery, by settlement or award, which plaintiff might have against defendant, but instructing trial court to hear evidence on procedural unconscionability defense).

8. The parties dispute whether OSG was also entitled to reduce its monthly PPA payment by any cure amounts it had already paid, but we need not resolve that dispute in order to conclude that the PPA is supported by consideration. There is no indication in the record that either party expected in August 2015 that cure payments would exceed $8,000 by November. Moreover, even if cure payments could be offset, Lawal was exchanging the possibility of receiving more than $1,952 in payments during those four months for a guarantee that he would receive a minimum of $10,000 (assuming, in both cases, that he did not reach maximum improvement earli-

to pay Lawal this additional amount provides consideration for the PPA. *See KIT Projects, LLC v. PLT P'ship*, 479 S.W.3d 519, 526–27 (Tex. App.–Houston [14th Dist.] 2015, no pet.) (holding promise to pay fee provided consideration for contract amendment).

Lawal points out that the amounts he received for maintenance and cure after November 2015 could easily have exceeded this amount, but nothing in the PPA modifies OSG's continuing obligation to provide Lawal with maintenance and cure after November 2015. Lawal also relies on the provision allowing OSG to offset the plan payments against any recovery in litigation. It was not known whether there would be any litigation when the parties signed the PPA, however, and in any event Lawal received consideration by getting the money early. *See In re Gerald Harris Builder, Inc.*, 927 F.2d 1067, 1069 (8th Cir. 1991) ("Even if [one party] was only advancing money that it would owe later, [the other party] received consideration by getting the money early."). Therefore, we hold that the PPA is supported by consideration.

## IV. The Federal Employers Liability Act does not invalidate the PPA's forum-selection clause.

 Lawal next contends that the forum-selection clause is not enforceable because the Jones Act[9] incorporates the Federal Employers Liability Act ("FELA"), which has been construed to prohibit forum-selection clauses. *See Boyd v. Grand Trunk W. R.R. Co.*, 338 U.S. 263, 265–66, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (per curiam).

In *Boyd*, the Supreme Court of the United States addressed the validity of a contract restricting the choice of venue for a suit under FELA. *Id.* at 263, 70 S.Ct. 26. Boyd was injured in the course of his duties as a railroad employee. *Id.* The railroad advanced Boyd $50 twice during the following month. *Id.* Boyd signed an agreement each time, stipulating that if his claim could not be settled and he elected to sue the railroad, he would file suit "within the county or district where [he] resided at the time [his] injuries were sustained and not elsewhere." *Id.* at 263–64, 70 S.Ct. 26. Although that county and district were in Michigan, Boyd filed suit in Illinois state court, and the railroad asked a Michigan court to enjoin the suit. *Id.* at 264, 70 S.Ct. 26.

With respect to available venues, FELA included the following provision, which remains substantially unchanged in the current statute:

> Under this Act an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this Act shall be concurrent with that of the courts of the several States
> . . . .

*Id.* at 265 (quoting 45 U.S.C. § 56). All parties agreed that this provision allowed

---

er). That guaranteed minimum amount is a sufficient benefit to provide consideration for the PPA.

9. The Jones Act provides:

A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30140.

Boyd to sue the Railroad in Illinois state court. FELA also includes a provision voiding any part of a contract "the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act." *Id.* (quoting 45 U.S.C. § 55).

Without addressing whether the plaintiff's choice of forum or venue under section 56 was a "liability created by [FELA]," [10] and with very little discussion, the Supreme Court "agree[d] with those courts which have held that contracts limiting the choice of venue are void as conflicting with [FELA]." *Id.* at 264–65, 70 S.Ct. 26. The Court stated that Boyd's "right to bring the suit in any eligible forum is a right of sufficient substantiality to be included with the Congressional mandate of § [55]." *Id.* In the Court's view, "[t]he right to select the forum granted in § [56] is a substantial right. It would thwart the express purpose of [FELA] to sanction defeat of that right by the device at bar." *Id.* at 266, 70 S.Ct. 26. Therefore, the Court held that the contract was void. *Id.* at 265, 70 S.Ct. 26.

OSG relies on the Supreme Court's subsequent opinion in *Pure Oil Company v. Suarez*, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), which addressed the relationship between the federal general venue statute and the venue provision of the Jones Act that existed at that time. In *Pure Oil*, an injured seaman filed his Jones Act suit against Pure Oil in federal district court in the Southern District of Florida. *Id.* at 202, 86 S.Ct. 1394. Pure Oil sought to transfer the case to the Northern District of Illinois. *Id.*

The Jones Act venue provision provided that " '[j]urisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.' " *Id.* at 203, 86 S.Ct. 1394.[11] As originally interpreted, the Jones Act venue provision would not have authorized Florida as a proper venue because corporate residence traditionally meant place of incorporation. *Id.* Pure Oil's place of incorporation was Ohio, and its principal office was in Illinois. *Id.* The federal general venue statute provided, however, that a corporate residence also included the district in which the company " 'is licensed to do business or is doing business,' " in addition to the place of incorporation. *Id.* at 204, 86 S.Ct. 1394 (quoting 28 U.S.C. § 1391(c)).

Section 1391(c) made the range of proper venues broader in actions against corporations by providing a venue in any judicial district in which the corporate defendant "is doing business." *Id.* This change to the venue statute brought venue law in line with "modern concepts of corporate operations." *Id.* Thus, "the liberalizing purpose underlying [section 1391(c)'s] enactment and the generality of its language support the view that it applies to all venue statutes using residence as a criterion, at least in the absence of contrary restrictive indications in any such statute." *Id.* at 205, 86 S.Ct. 1394. The Court observed that this

**10.** *See Krenger v. Pa. R.R.*, 174 F.2d 556, 560 (2d Cir. 1949) (L. Hand, C.J., concurring) (explaining why contract limiting choice of forum does not exempt carrier from liability for damages).

**11.** The Jones Act was formerly codified at 46 U.S.C. § 688. Congress renumbered the provisions of the federal maritime code under Title 46, effective October 6, 2006. See Pub. L.

No. 109–304, § 6(c), 120 Stat. 1510 (2006). The Jones Act is currently codified at 46 U.S.C. § 30104.

The Supreme Court noted that, although the Jones Act venue provision was framed in jurisdictional terms, it referred only to venue. *Pure Oil Co.*, 384 U.S. at 203, 86 S.Ct. 1394 (citing *Panama R.R. Co. v. Johnson*, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924)).

view of section 1391(c) was consistent with the primary purpose of the Jones Act, which was to give seamen substantive rights and a federal forum for prosecuting their claims. *Id.* Therefore, the Court held that section 1391(c)'s definition of corporate residence applied to the Jones Act. *Id.* at 204, 86 S.Ct. 1394.

Some jurisdictions have applied *Boyd* in Jones Act cases, holding that forum-selection clauses are void under FELA because the Jones Act incorporates federal laws "regulating recovery for personal injury to, or death of, a railway employee." 46 U.S.C. § 30140; *see, e.g., Boutte v. Cenac Towing, Inc.*, 346 F.Supp.2d 922, 931–32 (S.D. Tex. 2004); *Nunez v. Am. Seafoods*, 52 P.3d 720, 722–24 (Alaska 2002). Subsequently, the Fifth Circuit addressed whether an arbitration clause was void under the Jones Act by virtue of its incorporation of FELA. *Terrebonne v. K–Sea Transp. Corp.*, 477 F.3d 271, 280 (5th Cir. 2007). *Terrebonne* rejected the argument that *Boyd* applied to the Jones Act, reasoning that the Jones Act contained its own venue provision. *Id.* at 281. The Fifth Circuit relied on a prior decision holding that FELA did not govern venue in a Jones Act case. *Id.* (citing *Pure Oil v. Suarez*, 346 F.2d 890, 892 (5th Cir. 1965), *aff'd on other grounds*, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966)).[12] The *Terrebonne* court reasoned that because FELA's venue provision (section 56) was not applicable to Jones Act cases, it necessarily followed that nothing in FELA's voidness provision

(section 55) applied to Jones Act venue. *Id.* at 282. Therefore, neither section 55 nor *Boyd* voided the arbitration clause in *Terrebonne. Id.* at 282–83.[13]

After *Terrebonne*, the U.S. District Court for the Southern District of Texas addressed whether forum-selection clauses were enforceable under the Jones Act. *See Larrisquitu*, 2007 WL 2330187, at *1. The court concluded that although *Terrebonne* involved an arbitration agreement rather than a forum-selection clause, this difference did not affect its "clear holding that the FELA venue provisions do not apply in Jones Act cases[.]" *Id.* at *20. The court further observed that *Terrebonne* eliminated the statutory basis on which *Boutte* and *Nunez* held that the Jones Act incorporated the FELA venue provisions, making forum-selection clauses under the Jones Act unenforceable. *Id.* Thus, the *Larrisquitu* court held that forum-selection clauses are enforceable under the Jones Act. *Id.* at *23.

Under *Terrebonne* and *Larrisquitu*, Lawal would lose his argument that the forum-selection clause in the PPA is unenforceable. But in 2008, Congress intervened, repealing the venue provision of the Jones Act construed in *Pure Oil* and relied on by *Terrebonne* and *Larrisquitu. See Utoafili v. Trident Seafoods Corp.*, No. 09–2575 SC, 2009 WL 6465288, at *3 (N.D. Cal. Oct. 19, 2009) (citing National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110–181, § 3521, 122 Stat. 3, 596 (2008)). Some courts in other

---

12. As discussed above, the Supreme Court, which affirmed the Fifth Circuit's judgment in *Pure Oil*, applied the federal general venue statute to the Jones Act to expand the definition of corporate residence to include the district in which the company is " 'licensed to do business or is doing business.' " 384 U.S. at 204, 86 S.Ct. 1394 (quoting 28 U.S.C. § 1391(c)). In its analysis, however, the Supreme Court did not address FELA in connec-

tion with the venue provision of the Jones Act. *See Terrebonne*, 477 F.3d at 282.

13. In *Terrebonne*, the court also distinguished *Boyd* because that case did not involve the Federal Arbitration Act ("FAA") or an arbitration agreement. 477 F.3d at 283. However, the analysis involving the FAA in *Terrebonne* is not relevant to the issues presented in this case.

jurisdictions have since considered whether FELA's venue provision now applies to the Jones Act in light of the repeal of the Jones Act's venue provision, which was retroactive to October 6, 2006. *See, e.g., Riley v. Trident Seafoods Corp.,* Civ. No. 11–2500 (MJD/AJB), 2012 WL 245074, at *2–4 (D. Minn. Jan. 9, 2012); *Utoafili,* 2009 WL 6465288, at *2–6.

In *Utoafili,* the court concluded that the repeal of the Jones Act venue provision "pulled the rug out from under the rationale for refusing to incorporate FELA's venue provision into the Jones Act." 2009 WL 6465288, at *3. The *Utoafili* court looked to legislative history to determine whether FELA's prohibition was incorporated into the Jones Act. *Id.* at *3. A House Report stated that the 2008 repeal was intended to take effect "without substantive change" and "to make clearer that the prior law regarding venue, including the holding of [*Pure Oil*] and cases following it, remains in effect, so that the action may be brought wherever the seaman's employer does business." *Id.* at *5 (quoting H.R. Rep. No. 110–437, at 5 (2007)). The *Utoafili* court held there was no basis to conclude that Congress intended FELA's venue provision to be read into the Jones Act. *Id.* at *5. In *Riley,* another federal district court similarly considered legislative history, followed the reasoning of *Utoafili,* concluded that FELA's venue provisions should not be read in the Jones Act, and held that the forum-selection clause was not void. 2012 WL 245074, at *3–4.

We conclude that neither *Boyd* nor *Pure Oil* answers the question presented here. *Boyd* did not address the Jones Act, and *Pure Oil* interpreted a Jones Act venue provision that has since been repealed. In addition, unlike *Utoafili* and *Riley,* we do not resort to extrinsic materials such as legislative history. Instead, we focus our analysis on the plain language of the Jones Act and assume that the ordinary meaning of that language accurately expresses congressional purpose. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,* 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004); *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

 The second sentence of the Act provides: "Laws of the United States *regulating recovery* for personal injury to, or death of, a railway employee apply to an action under this section." 46 U.S.C. § 30104 (emphasis added). The legal concept of venue does not "regulate recovery." Rather, as the Supreme Court has recognized, "venue is a matter that goes to process rather than substantive rights—determining which among various competent courts will decide the case"; more specifically, venue "does not bear on the substantive right to recover" but is a "matter of judicial housekeeping" under the Jones Act. *Am. Dredging Co. v. Miller,* 510 U.S. 443, 453–54, 457, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). We therefore hold that the FELA venue provision does not apply to an action under the Jones Act. As a result, the FELA voidness provision addressed in *Boyd* plays no role in determining Jones Act venue and does not render the forum-selection provision of the PPA unenforceable. *See Terrebonne,* 477 F.3d at 282.

## V. Lawal has not shown that the forum-selection clause is unenforceable under federal maritime law.

 Lawal also challenges the PPA's forum-selection clause as contrary to a strong public policy of protecting seamen. Specifically, Lawal contends that enforcing the PPA is unreasonable because it is a release, which he signed without the guidance of legal counsel.

In analyzing this challenge, we apply federal maritime law. Both state and federal courts have jurisdiction to resolve Jones Act suits. *In re Omega Protein, Inc.*, 288 S.W.3d 17, 20 (Tex. App.–Houston [1st Dist.] 2009, orig. proceeding). "When a state court hears an admiralty case, that court occupies essentially the same position occupied by a federal court sitting in diversity: the state court must apply substantive maritime law but follow state procedure." *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). Federal law governs the enforceability of forum-selection clauses in admiralty cases. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Texas state courts generally employ the federal standard in analyzing forum-selection clauses even outside the maritime context; thus, the substantive analysis under federal law is similar to that under state law, and Texas procedural rules apply. *In re Omega Protein, Inc.*, 288 S.W.3d at 20.

Forum-selection clauses are prima facie valid and should be enforced unless doing so would be unreasonable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016) ("This court, in keeping with Supreme Court precedents, applies a strong presumption in favor of the enforcement of mandatory FSCs."). A party seeking to avoid a forum-selection clause bears a heavy burden of proof. *M/S Bremen*, 407 U.S. at 17, 92 S.Ct. 1907. The party must show that (1) the clause was the product of fraud or overreaching; (2) trial in the contractual forum would be so gravely difficult and inconvenient that the plaintiff will be effectively be deprived of his day in court; or (3) enforcement would contravene a strong public policy of the forum in which suit is brought. *Id.* at 12–13, 15, 18, 92 S.Ct. 1907.

In this case, Lawal contends that protecting seamen against over-reaching post-injury releases is such a public policy. "Seamen ... are wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Karim v. Finch Shipping Co.*, 374 F.3d 302, 310 (5th Cir. 2004). Releases or settlements of a seaman's rights are subject to careful scrutiny. *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007). It is the ship owner's burden to prove that a seaman's release is valid. *Id.* at 304. Consequently, the ship owner must demonstrate that the release was "executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Garrett v. Moore–McCormack*, 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *see also Premeaux v. Socony–Vacuum Oil Co.*, 144 Tex. 558, 192 S.W.2d 138, 141 (1946).

OSG responds that a plain reading of the PPA shows it is not a release. A release is a writing providing that a duty or obligation owed to one party is discharged immediately or on the occurrence of a condition. *Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 876–77 (Tex. App.–Houston [14th Dist.] 2013, pet. denied); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.–Houston [1st Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692 (Tex. 2000). A release extinguishes a claim and bars recovery on the released matter. *Id.*

Examining the plain language of the PPA, we conclude that it is not a release of Lawal's claims against OSG related to his July 19, 2015 injury. Rather, the PPA contemplates the possibility that Lawal would bring suit against OSG for his injury, al-

beit in Florida. Therefore, Lawal's non-representation by a lawyer at the time he signed the forum-selection clause does not establish that the clause is unenforceable on public policy grounds.[14]

Moreover, Lawal has not shown that the PPA's forum-selection clause is otherwise unenforceable. Lawal presented no evidence in the trial court that the clause was procured as a result or fraud or over-reaching, or that litigating his claims in Florida would be so gravely difficult and inconvenient that he would be deprived of his day in court.[15] Therefore, Lawal has not satisfied his burden to show that the forum-selection clause should not be enforced.

## VI. The Collective Bargaining Agreement did not require that the union represent Lawal in negotiating the PPA.

 Finally, Lawal asserts that the CBA expressly covers the legal rights and remedies of the injured employee against the employer for work-related injuries. According to Lawal, OSG violated the CBA by negotiating the PPA with him directly, upsetting the relationship defined by the CBA and causing him to lose an advantage

provided to him under the CBA—union representation to protect his rights and interests.

Section 1 of the CBA provides:

The American Maritime Association (Association) on behalf of itself and each member Company of the Association [including OSG] recognizes the [specified district of the Seafarers International] Union as the sole and exclusive bargaining representative of all Unlicensed Personnel employed on board American flag vessels owned or operated by such Companies or its subsidiaries.

 The key question in resolving Lawal's challenge is whether the PPA changes the terms and conditions of Lawal's employment with OSG. Under the National Labor Relations Act ("NLRA"),[16] an employer has a duty to bargain collectively with the duly recognized or accredited representative of the employees, and disregard of this duty violates the NLRA. *May Dep't Stores Co. v. N.L.R.B.*, 326 U.S. 376, 383–84, 66 S.Ct. 203, 90 L.Ed. 145 (1945). The mandatory subjects of collective bargaining between the union and the employer are wages, hours, and other terms and conditions of employment. *First*

14. In the trial court, Lawal relied on the Texas Arbitration Act ("TAA") to support his position that the forum-selection agreement is not enforceable because he was not represented by counsel at the time he signed the PPA. The TAA does not apply to a claim for personal injury unless each party to the claim, on the advice of counsel, agrees in writing to arbitrate, and the agreement is signed by each party and each party's attorney. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002(c) (West 2011). Because the PPA does not contain an agreement to arbitrate, this TAA provision does not apply. Furthermore, this provision is inconsistent with the Federal Arbitration Act and therefore is preempted by that Act. *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) (per curiam); *Vista Quality Mkts. v. Lizalde*, 438 S.W.3d 114, 122–23 (Tex. App.–El Paso 2014, no pet.); *Forged Components, Inc. v. Guzman*,

409 S.W.3d 91, 98 (Tex. App.–Houston [1st Dist.] 2013, no pet.).

15. *Cf. Harrington*, 602 F.3d at 127 (remanding case to district court for findings on (1) the plaintiff's claimed lack of mental capacity to enter into the post-injury arbitration agreement due to intoxication from drinking heavily and taking pain medication; and (2) ratification); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1142–43 (9th Cir. 2004) (remanding case to district court to hold evidentiary hearing on whether plaintiff's financial hardships and physical limitations would render enforcement of forum-selection clause unreasonable because plaintiff would be effectively denied his day in court).

16. 29 U.S.C. §§ 151–169.

*Nat. Maint. Corp. v. NLRB*, 452 U.S. 666, 674, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981); *N.L.R.B. v. Wooster Div. of Borg–Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). To allow the employer to bargain directly with an employee on subjects designated for collective bargaining would "infringe an essential principle of collective bargaining." *May Dep't Stores*, 326 U.S. at 384, 66 S.Ct. 203. But nothing in the NLRA prevents the employee, "because he is an employee, [from] making any contract provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice." *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 339, 64 S.Ct. 576, 88 L.Ed. 762 (1944).

In this case, the PPA (1) addresses the forum for resolution of any claims arising out of the July 19, 2015 incident; (2) provides for additional payments to Lawal while expressly leaving his wages requiring a union contribution unchanged; (3) provides that Lawal will not suffer any adverse employment actions if he decides not to participate; and (4) does not change any duties or obligations of the parties under the CBA. For these reasons, the PPA is not an agreement addressing terms and conditions of Lawal's employment, and therefore the CBA did not require union representation of Lawal in negotiating the PPA.[17]

---

17. *See Nunez v. Weeks Marine, Inc.*, Civ. A. No. 06–3777, 2007 WL 496855, at *3 (E.D. La. Feb. 13, 2007) (holding that, in Jones Act case, post-injury arbitration agreement was not part of plaintiff's employment contract because there was no language in agreement indicating that plaintiff's acceptance of the agreement was condition of his continued employment); *Schreiber*, 9 N.Y.3d at 337, 849 N.Y.S.2d 194, 879 N.E.2d 733 (rejecting argument that post-injury arbitration agreement providing for advances of wages in exchange for arbitrating claims related to the injury was part of contract of employment, and holding instead it was a separate agreement made after defendant had employed plaintiff when the reason for arbitration—the injury—already existed); *In re Weeks Marine, Inc.*, 242 S.W.3d at 855–56 (holding post-injury arbitration agreement was not "transformed into a contract of employment merely because it provided for advances to be calculated from [the plaintiff's] historical wages or credited against any eventual recovery for lost wages under the Jones Act" or because defendant made assurances that any advances under the agreement would be in addition to maintenance and cure to which plaintiff was already entitled).

## CONCLUSION

The trial court abused its discretion by denying OSG's motion to dismiss based on an enforceable forum-selection clause, and OSG does not have an adequate remedy by appeal. Accordingly, we conditionally grant OSG's petition for writ of mandamus and direct the trial court to (1) vacate its March 7, 2016 order denying OSG's motion to dismiss and (2) dismiss the case. We are confident that the trial court will comply, and our writ will issue only if it does not.