2026 Tex. Bus. 39



THE BUSINESS COURT OF TEXAS
ELEVENTH DIVISION

| | | |
|---|---|---|
| SOUTH SHORE ER, LLC, | § | |
| | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| and | § | |
| | § | |
| SUCHMOR THOMAS, M.D. et al. | § | |
| | § | Cause No. 26-BC11A-0039 |
| *Third-Party Defendants,* | § | |
| | § | |
| v. | § | |
| | § | |
| AMIR BASHIRI et al., | § | |
| | § | |
| *Defendants/Counter-Plaintiffs.* | § | |

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFF SOUTH SHORE ER, LLC'S MOTION TO REMAND

### INTRODUCTION

¶ 1.    Before the Court is a Motion to Remand (the "Motion") filed by

Plaintiff/Counter-Defendant South Shore ER, LLC ("SSER") on May 5, 2026.[1]

---

[1] The Motion also was filed by Sarpreet Basra, M.D. However, on June 1, 2026, before the Motion could be heard, Dr. Basra was nonsuited from the case.

Defendants/Counter-Plaintiffs Amir Bashiri ("Bashiri") and Jean Joseph, M.D. ("Dr. Joseph") and Defendants Manvel Emergency Center, LLC ("MEC"); Brazos Real Property Holdings, LLC ("BRPH"); Convenient Medical Partners, LLC ("CMP"); TP ER Acquisitions, LLC ("TP ER"); Anna Bashiri ("Mrs. Bashiri"); Adria, Inc. ("Adria"); Philip Zachariah, M.D. ("Dr. Zachariah"); and Joseph Medical Group, PLLC ("JMG") (collectively, "Manvel Group") filed their response on May 15, 2026. Defendants Stephen Wang ("Wang") and BB&W Architects, LLC ("BB&W") (together with Manvel Group, "Defendants") filed a separate response the same day. SSER filed a reply on May 22, 2026. The Court heard the Motion on June 4, 2026.

¶ 2.    After reviewing the briefing, evidence, arguments of counsel, and applicable law, the Court concludes that the Motion should be **DENIED**.

## BACKGROUND

¶ 3.    This case arises from the alleged diversion of a corporate opportunity to open a stand-alone emergency center in Manvel, Texas.

### A.    The beginning of SSER

¶ 4.    In 2021, Suchmor Thomas, M.D. ("Dr. Thomas") formed SSER to own and operate a stand-alone emergency medical facility in League City, Texas.[2] SSER

---

[2] Pl.'s 5th Am. Pet. ¶ 19.

is governed by a Company Agreement, amended in August 2021 ("Company Agreement").[3]

¶ 5.     The Company Agreement contains non-compete, non-solicitation, and confidentiality provisions.[4] Of particular relevance, the non-compete prohibits members from owning, operating, managing, or controlling a "Competing Business" within ten miles of the SSER facility during the "Non-Compete Period."[5]

¶ 6.     Dr. Thomas subsequently invited Bashiri to become a member and manager of SSER. By oral agreement, Bashiri received a 15% membership interest in the LLC in exchange for serving as its Chief Nursing Officer and Chief Operating Officer.[6] Bashiri did not make a capital contribution to the LLC.[7]

¶ 7.     Sometime later, Dr. Joseph also became a member of SSER.[8]

¶ 8.     SSER alleges that both Bashiri and Dr. Joseph, as members of SSER, were bound by the Company Agreement.[9]

---

[3] Ex. A to Pl.'s 5th Am. Pet. (Company Agreement).
[4] Pl.'s 5th Am. Pet. ¶¶ 23–27; Company Agreement §§ 7.5(a) (Covenant Not to Compete), 7.5(b) (Covenant Not to Solicit), 7.4(b) (Members' Duty to Not Disclose Confidential Information).
[5] Company Agreement § 7.5(a).
[6] Pl.'s 5th Am. Pet. ¶ 20.
[7] *Id.*
[8] *Id.* ¶ 21.
[9] *Id.* ¶¶ 20–21.

## B.    The planned expansion

¶ 9.    In 2022, SSER began planning an additional emergency facility in Manvel, Texas.[10] This planning involved identifying potential properties for purchase, designing facility layouts, completing feasibility studies and market analyses, and conducting site visits.[11] SSER asserts that this information is confidential and proprietary.[12] Bashiri, as "one of the most active participants in [SSER's] expansion efforts," had access to this information.[13]

¶ 10.    In or about 2023, Dr. Thomas informed Wang, an architect, that SSER intended to retain his firm, BB&W, to help bring SSER's expansion plans to fruition.[14] Wang provided SSER with professional advice and recommendations regarding possible locations in Manvel.[15]

## C.    The alleged diversion

¶ 11.    SSER alleges that Bashiri and Dr. Joseph "teamed up" with Dr. Zachariah to conspire to divert the Manvel expansion opportunity from SSER to themselves.[16]

---

[10] *Id.* ¶ 31.
[11] *Id.* ¶¶ 31–32.
[12] *Id.* ¶ 32.
[13] *Id.*
[14] *Id.* ¶ 34.
[15] *Id.*
[16] *Id.* ¶ 35.

¶ 12.    According to SSER, this conspiracy resulted in the formation of BRPH, the entity that purchased land in Manvel "that Bashiri had scouted on behalf of [SSER] as part of [its] confidential site-selection process."[17] BRPH purchased the land (the "Manvel Property") allegedly to compete directly with SSER's planned expansion.[18] Other entities controlled by the conspirators—including Adria, CMP, and JMG—allegedly participated in the conspiracy by contributing funds.[19] MEC was then formed by Bashiri, Dr. Joseph, and Dr. Zachariah to operate a forthcoming stand-alone emergency medical facility less than two miles from SSER's planned site.[20] BRPH contracted with BB&W to design the competing facility.[21]

¶ 13.    SSER further alleges additional tortious conduct, asserting that:

- TP ER marketed the BRPH Manvel facility as "Manvel ER" despite SSER already having registered "Manvel ER, LLC" with the Texas Secretary of State;[22]

- Bashiri, Dr. Joseph, Dr. Zachariah, BRPH, MEC, BB&W, and Wang conspired to prevent SSER from obtaining a required special use permit for its planned expansion from the City of Manvel;[23]

- Bashiri, Dr. Joseph, Dr. Zachariah, BRPH, and MEC solicited SSER employees;[24] and

---

[17] *Id.* ¶ 36.
[18] *Id.*
[19] *Id.* ¶ 37.
[20] *Id.* ¶ 38.
[21] *Id.* ¶¶ 42–44.
[22] *Id.* ¶ 45.
[23] *Id.* ¶ 46.
[24] *Id.* ¶ 47.

- Bashiri took a physical file containing SSER's confidential information related to the planned expansion, as well as other confidential information belonging to SSER, and has not returned it.[25]

¶ 14. In August 2024, SSER voted to remove Bashiri and Dr. Joseph from the LLC and terminate their membership interests.[26]

## D. Litigation ensues

¶ 15. SSER initiated litigation against Bashiri in December 2024 in a Galveston County district court ("District Court"). SSER added the remaining defendants via its Third Amended Petition filed on February 13, 2026. As part of its alleged damages, SSER sought restitution from Bashiri in the amount of $1.84 million for distributions paid to him over a three-year period.[27] No other specific damage amounts were alleged.

¶ 16. On February 23, 2026, Bashiri and Dr. Joseph filed their First Amended Counterclaim[28] against SSER and managing members (Dr. Thomas, Sarpreet Basra, M.D., and Stavan Vora), alleging wrongful removal.[29] On March 16,

---

[25] *Id.* ¶¶ 48–49.
[26] *Id.* ¶ 50.
[27] *See* Pl.'s 3d Am. Pet. ¶¶ 32, 54–56.
[28] The parties' briefing indicates the filing and acceptance of the First Amended Counterclaim. However, upon review of the Galveston County record, the Court has been unable to locate a file-marked copy of the First Amended Counterclaim. The Court will accept that there exists a filed and accepted version of the First Amended Counterclaim and will cite to Exhibit E to SSER's Motion as if it were a file-marked copy of the pleading.
[29] Bashiri & Dr. Joseph's 1st Am. Countercl. ¶¶ 18–24.

2026, Wang and BB&W also filed counterclaims seeking a declaratory judgment of non-liability.[30]

¶ 17.  SSER's live pleading, the Fifth Amended Petition, was filed March 31, 2026. It asserts a broad array of business torts, statutory claims, and contract actions: breach of contract, unjust enrichment, breach of fiduciary duty, fraud by nondisclosure, civil conspiracy, aiding and abetting breach of fiduciary duty, trade-secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"), tortious interference with contract, tortious interference with prospective business relations, unfair competition, trade-name infringement, theft under the Texas Theft Liability Act, conversion, money had and received, and declaratory judgment. SSER also requests an accounting of profits earned by several defendants and a constructive trust over the Manvel Property.

¶ 18.  Like prior iterations, the Fifth Amended Petition specifies only a single dollar amount—the $1.84 million sought from Bashiri for unjust enrichment.

E.    **Removal to the Business Court**

¶ 19.  On April 22, 2026, Defendants filed their Joint Notice of Removal (the "Notice") in the Business Court. Defendants asserted they first learned of facts establishing the Court's jurisdiction on March 23, 2026, when SSER served an

---

[30] Wang & BB&W Countercl. ¶¶ 5, 7.

expert report quantifying its damages at over $16 million.[31] Defendants allege that prior to the expert report, neither the Fifth Amended Petition nor any prior pleading provided notice that the amount in controversy exceeds $5 million.[32] The Notice was filed exactly 30 days after service of the expert report.

¶ 20. SSER now moves to remand, arguing that (1) a forum-selection clause mandates litigation in Galveston County, (2) removal was untimely, and (3) SSER does not consent to supplemental jurisdiction in the Business Court.

## REMOVAL AND REMAND STANDARDS

¶ 21. Texas Government Code § 25A.006 and Texas Rule of Civil Procedure 355 govern the removal of cases from district courts to the Business Court. If all parties to an action agree to removal, the case may be removed at any time during its pendency.[33]

¶ 22. If removal is contested, the removing party must file a notice of removal within 30 days after the party "discovered, or reasonably should have discovered, facts establishing the business court's" jurisdiction over the case.[34] If a contested

---

[31] Defs.' Notice of Removal ¶¶ 33–34.

[32] *Id.* Defendants also argue that prior to March 23, 2026, when SSER also filed its Fourth Amended Petition expressly alleging a claim under TUTSA, they also had no notice that SSER was pursuing claims that fall under the Court's subject-matter jurisdiction pursuant to Texas Government Code § 25A.004. *See id.* ¶ 36. However, the Court disagrees. SSER first asserted a cause of action against Defendants for "trade secret misappropriation" in its Third Amended Petition. Pl.'s 3d Am. Pet. ¶¶ 71–74. The Business Court gained jurisdiction to hear cases related to the use of trade secrets on September 1, 2025, when § 25A.004(d)(4) went into effect. With that said, the additional amount-in-controversy hook was still lacking until the expert report was served on Defendants, as explained further in this Opinion.

[33] TEX. GOV'T CODE § 25A.006(f); TEX. R. CIV. P. 355(c)(1).

[34] TEX. GOV'T CODE § 25A.006(f)(1)(B); TEX. R. CIV. P. 355(c)(2)(A).

removal is untimely, or if the Court lacks jurisdiction over a removed action, the Court must remand the case back to the district court.[35]

## ANALYSIS

### A. The Company Agreement contains an unenforceable venue-selection clause.

¶ 23. SSER first argues that remand is required because Section 12.3 of the Company Agreement contains a "forum-selection clause" mandating that disputes arising under the agreement be brought in Galveston County, Texas:[36]

> applicable provision of the Act will control. All disputes arising out of or related to this Agreement (including, without limitation, any litigation, special proceeding, or other proceeding involving the Members and/or the Company) shall be subject to the exclusive jurisdiction and venue of the state courts of Texas located in Galveston County, Texas, and the U.S. District Court for the Southern District of Texas, and the Company and each Member hereby consents to such jurisdiction and venue.

¶ 24. Defendants counter that Section 12.3 is an unenforceable venue-selection clause. They argue that SSER fails to distinguish between forum- and venue-selection clauses under Texas law, and that no statute permits the enforcement of Section 12.3, including the major-transaction statute in the Texas Civil Practice and Remedies Code.[37] The Court agrees.

---

[35] *See* TEX. GOV'T CODE § 25A.006(d); TEX. R. CIV. P. 355(f)(1).
[36] Company Agreement § 12.3.
[37] *See* Manvel Group's Resp. 11–15; Wang & BB&W Resp. ¶¶ 20–24; TEX. CIV. PRAC. & REM. CODE § 15.020.

¶ 25.  Under Texas law, a critical distinction exists between forum-selection and venue-selection clauses. A forum-selection clause "contractually selects the adjudicative body in which jurisdiction is properly invoked, generally a nation or state."[38] Forum-selection clauses are "generally enforceable and presumptively valid" unless shown to be unreasonable, the result of fraud, in contravention to public policy, or selecting a forum that would be "seriously inconvenient for trial."[39]

¶ 26.  A venue-selection clause, conversely, "selects the geographic place of trial" within a given forum.[40] While "venue" generally refers to a particular county, it may also refer to a particular court.[41] Venue-selection clauses are generally unenforceable unless specifically authorized by statute.[42] One such statute is Texas Civil Practice and Remedies Code § 15.020, which mandates enforcement of venue-selection clauses in actions arising from "major transactions."[43]

¶ 27.  "[N]ot all agreements can be neatly labeled as selecting either a forum or a venue," as some select both.[44] When a clause selects Texas as a forum *and* a particular county as the venue for litigation, the provision may be characterized

---

[38] *Xia v. Floyd*, 638 S.W.3d 821, 826 (Tex. App.—Fort Worth 2021, no pet.).

[39] *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (per curiam).

[40] *Xia*, 638 S.W.3d at 825; *see also In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d 759, 762 (Tex. 2020, orig. proceeding) ("Venue refers to a 'geographic location within the forum where [a] case may be tried.'").

[41] *In re OSG Ship Mgmt., Inc.*, 514 S.W.3d 331, 337 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding).

[42] *Tex. Mun. League Intergovernmental Risk Pool v. City of Hidalgo*, No. 13-22-00250-CV, 2022 WL 3651986, at *5 (Tex. App.—Corpus Christi-Edinburg Aug. 25, 2022, pet. denied); *see Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 828 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

[43] *Hiles*, 402 S.W.3d at 828; *see* TEX. CIV. PRAC. & REM. CODE § 15.020(a)–(b).

[44] *In re OSG Ship Mgmt., Inc.*, 514 S.W.3d at 337.

either as a "hybrid" clause—with the venue portion unenforceable[45]—or a simple venue-selection clause.[46] Under either characterization, the venue component is enforceable only if authorized by statute.

¶ 28. Section 12.3 selects Galveston County as the place of litigation. Whatever label is applied to the provision, its venue-selection component is unenforceable unless expressly authorized by statute. The Court now considers whether any such statutory authorization applies.

¶ 29. SSER argues that Section 12.3 is enforceable because the Company Agreement is "part of a major transaction" under Texas Civil Practice and Remedies Code § 15.020.[47] The Court sees things differently.

¶ 30. A "major transaction" is "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million."[48] Under § 15.020(b), if the defendant agreed in writing that an action

---

[45] *See, e.g.*, *Dr. Mylissa's Med. Boutique LLC v. Balboa Cap. Corp.*, No. 02-25-00271-CV, 2025 WL 3119021, at *6 (Tex. App.—Fort Worth Nov. 6, 2025, no pet.) (mem. op.) (finding that clause providing that "[y]ou submit to the jurisdiction of TX and agree that the TX state courts and/or the United States District Court for Travis County, TX[,] shall have exclusive jurisdiction over any action or proceeding to enforce this EFA or any action or proceeding arising out of this EFA" selected both a forum and a venue and that the venue-selection portion was unenforceable).

[46] *City of Hidalgo*, 2022 WL 3651986, at *6 ("Here, the clause at issue expressly references venue, provides that venue lies 'exclusively in the state and federal courts of Travis County, Texas,' and that Texas is the forum state. We conclude that this provision is not a forum selection clause, but rather constitutes a venue selection clause.").

[47] Pl.'s Reply 7–8.

[48] TEX. CIV. PRAC. & REM. CODE § 15.020(a).

arising from the transaction at issue may be brought in a particular county, and the transaction qualifies as a major transaction, suit must be brought in that county. If the transaction is not a major transaction, the venue provision cannot be enforced.[49]

¶ 31.  SSER's first theory—that the Company Agreement itself constitutes a major transaction—fails on the face of the document. The Agreement does not state the value of the consideration given for any membership interest. It sets forth each member's percentage interest,[50] but contains no stated value of consideration that any member paid, was obligated to pay, or that SSER received or was entitled to receive.

¶ 32.  SSER argued at the hearing that Bashiri's 15% interest had a stated value of $1.84 million because that is what he received in distributions over three years.[51] That argument, however, conflates the stated value of consideration with distributions that accrued over time and were contingent on the company's future performance. The statute is precise: it asks for the "*aggregate stated value*" on the face of the agreement.[52] Contingent or prospective amounts do not suffice.[53] *Stated*

---

[49] *See id.* § 15.020(e).

[50] Ex. A to Company Agreement.

[51] *See* Pl.'s 5th Am. Pet. ¶¶ 33, 66.

[52] *See In re Togs Energy, Inc.*, No. 05-09-01018-CV, 2009 WL 3260910, at *1 (Tex. App.—Dallas Oct. 13, 2009, no pet.) (mem. op.) ("Under section 15.020(a), the parties' agreement must contain the aggregate stated value of the consideration. Because the Settlement and Release Agreement does not contain this information, it fails to qualify as a 'major' transaction under section 15.020."); *Hughes v. Pearcy*, No. 03-10-00319-CV, 2014 WL 7014353, at *3 (Tex. App.—Dallas Dec. 8, 2014, pet. denied) (mem. op.) (citing *In re Togs Energy, Inc.*, 2009 WL 3260910, at *1).

[53] *Hughes*, 2014 WL 7014353, at *3 (finding no major transaction because payments in consideration were "conditioned on future, uncertain net sales"); *NGL Water Sols. Permian, LLC v. Lime Rock Res. V-A, L.P.*,

*value*, in short, means consideration that is fixed and ascertainable from the agreement itself, not amounts that can be calculated only in hindsight.[54] Because no such amount appears in the Company Agreement, the agreement is not a major transaction as defined in § 15.020.

¶ 33. SSER's second theory—that the Company Agreement is "part of" a major transaction when read together with offering memoranda and subscription agreements purporting to offer $1.375-million in membership units[55]—fails for two independent reasons. First, the evidence purporting to support this argument was offered for the first time with SSER's Reply brief, not its Motion. Evidence submitted with a reply is untimely and deprives the opposing party of a fair opportunity to respond. The Court declines to consider it on that basis, among others.[56]

¶ 34. Second, even if the evidence had been timely and properly before the Court, SSER's theory rests on aggregating the consideration paid by *all* SSER members for their collective membership interests. The statute does not permit that approach. The phrase "a person" in the definition of "major transaction" is singular, requiring that *one person* pay, receive, or be obligated to pay or entitled to receive

---

2025 Tex. Bus. 20, ¶ 19, 2025 WL 1445867, at *4 (11th Div.) (mem. op.) (finding no major transaction where agreement "state[d] no value" and "any potential consideration was conditioned on several events that never occurred").

[54] *See id.*

[55] Pl.'s Reply 8.

[56] For further explanation of the Court's evidentiary rulings, see the concurrently filed Order Regarding Objections to and Motion to Strike South Shore ER, LLC's and Sarpreet Basra, M.D.'s Reply Exhibits.

consideration of $1 million or more. A transaction in which multiple persons each contribute smaller amounts does not qualify as a major transaction merely because their contributions, taken together, reach the statutory threshold. SSER has cited no authority to the contrary, and the statute's plain language forecloses the argument.

¶ 35. Accordingly, the venue-selection clause in Section 12.3 is unenforceable.[57]

**B.    Alternatively, even if Section 12.3 were enforceable, the Eleventh Division is "located in" Galveston County for purposes of venue.**

¶ 36. Because the Court has concluded that the venue-selection clause in Section 12.3 is unenforceable, the Court's analysis under Section A is fully dispositive of this ground for remand. However, as an alternative basis for its ruling, and in the interest of creating a complete record, the Court notes that even if Section 12.3 were enforceable, removal to this Court would still be proper.

¶ 37. SSER contends that because the Eleventh Division does not maintain a physical courthouse in Galveston County, Section 12.3 independently precludes

---

[57] Apart from the venue-selection argument, Wang and BB&W argue that they are not subject to Section 12.3 because they are not signatories to the Company Agreement. Wang & BB&W Resp. ¶¶ 16–19. The Court agrees. Non-signatories to contracts are not bound by venue-selection clauses contained in them. *See Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 443 (Tex. 2017) ("As a general proposition, a forum-selection clause may be enforced only by and against a party to the agreement containing the clause."); *In re W. Dairy Transp., L.L.C.*, 574 S.W.3d 537, 545 (Tex. App.—El Paso 2019, orig. proceeding [mand. denied]) ("As to . . . forum clauses, nonsignatories may be bound only under recognized contract or agency principles."). SSER failed to present any evidence that Wang or BB&W were signatories to the Company Agreement.

removal.[58] The Court disagrees. The statutory framework of Chapter 25A reflects the legislature's intent that each Business Court division is legally situated in every county "within the geographic boundaries of the division."[59]

¶ 38.   Texas Government Code § 25A.003 designates the counties comprising each Business Court division. The Eleventh Division consists of the six counties of the Eleventh Administrative Judicial Region plus Montgomery County, and Galveston County is among them.[60]

¶ 39.   Chapter 25A also contains provisions that protect plaintiffs—who hold the initial choice of forum—from any venue disadvantage that might otherwise result from removal. A removed case that proceeds to jury trial must be tried in the county in which the plaintiff originally filed suit.[61] And where a written contract specifies a particular county for venue, any jury trial must likewise be conducted in that designated county.[62]

¶ 40.   The legislature explicitly provided that "a business court judge may hold court at any courtroom within the geographic boundaries of the division to which the judge is appointed," and that a county "shall accommodate the business

---

[58] Pl.'s Mot. 9–11.
[59] TEX. GOV'T CODE § 25A.017(d).
[60] TEX. GOV'T CODE § 25A.003(m); *id.* § 74.042(*l*) ("The Eleventh Administrative Judicial Region is composed of the counties of Brazoria, Fort Bend, Galveston, Harris, Matagorda, and Wharton.").
[61] *Id.* § 25A.015(c).
[62] *Id.* § 25A.015(d).

court in the conduct of the court's hearings and other proceedings" using existing facilities.[63] Taken together, these provisions mean the Eleventh Division is statutorily authorized to hold proceedings in Galveston County, and that Galveston County is statutorily required to host those proceedings. The division is not confined to a single fixed location within its territory.

¶ 41. The practical effect in this case is consistent with the parties' contractual expectations. Any jury trial would be conducted in Galveston County before Galveston County jurors, with proceedings coordinated through Galveston County court facilities and personnel.[64] A party that bargained for Galveston County as the venue for litigation receives exactly that guarantee.

¶ 42. Rather than engaging with these statutory provisions, SSER relies on federal cases holding that removal is improper where a forum-selection clause designates a county in which no federal courthouse is located.[65] That analogy is inapt. Federal district courts are geographically fixed; a federal district court sitting in Houston cannot hold proceedings in Galveston as of right. Business Court divisions operate differently. Chapter 25A expressly authorizes—and obligates host counties to facilitate—proceedings anywhere within a division's geographic

---

[63] *Id.* § 25A.017(d).
[64] The signatories waived their right to a trial by jury. Company Agreement § 12.12.
[65] Pl.'s Mot. 10.

boundaries. SSER's federal cases involve a structural limitation that does not exist here.

¶ 43.  Moreover, accepting SSER's position would mean that any forum- or venue-selection clause designating a county that does not house a Business Court division's chambers could defeat removal, even when the division encompasses that county. Nothing in Chapter 25A supports that result, and the Court declines to adopt an interpretation that would frustrate the legislature's evident purpose of providing a statewide forum for significant commercial disputes.

¶ 44.  Accordingly, removal to the Eleventh Division, which encompasses Galveston County, does not violate Section 12.3 even if that provision were otherwise enforceable. Remand on this basis is denied.

## C.  Defendants' Notice of Removal establishes the requisite amount in controversy.

¶ 45.  SSER next argues that removal was untimely because Defendants should have calculated that the amount in controversy exceeded $5 million using "basic math" upon the filing of the Third Amended Petition in February 2026.[66] Again, the Court disagrees.

---

[66] Pl.'s Mot. 15–16. SSER also argues that at least four "subject-matter jurisdictional hooks" were identified in the Third Amended Petition. *Id.* at 12. However, based on Defendants' briefing, whether SSER pleaded the types of claims the Court can hear is not in dispute. What is in dispute is whether the amount in controversy is met based on SSER's pleadings. The Court therefore analyzes that argument.

¶ 46. The Court looks first to the face of a plaintiff's pleadings to determine if the jurisdictional allegations have been adequately pleaded.[67] The Court construes those pleadings liberally in favor of jurisdiction.[68]

¶ 47. Here, neither the Third nor the Fifth Amended Petition contains facts sufficient to establish an amount in controversy exceeding $5 million. The only sum quantified anywhere in SSER's pleadings is the $1.84 million sought from Bashiri for distributions received while allegedly failing to perform his duties as Chief Nursing Officer.[69] The pleadings include no allegations quantifying the value of the requested constructive trust over the Manvel Property, the lost profits from the diverted corporate opportunity, or any other element of SSER's claimed damages.[70] While a petition need not recite a total damages figure to confer jurisdiction, it must allege facts from which a jurisdictional amount can reasonably be determined.[71]

¶ 48. SSER argues that Defendants should have inferred a $12 million amount in controversy by extrapolating the total profitability of SSER from Bashiri's

---

[67] *See C Ten 31 LLC ex rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 33, 708 S.W.3d 223, 237 (3d Div.) ("Whether filing in the Business Court or a district court, a plaintiff must plead facts that affirmatively show the jurisdiction of the court in which the action is brought, including that the relief sought is within the court's amount-in-controversy limits . . . .").

[68] *Id.* ¶ 35, 708 S.W.3d at 238 (citing *Tex. Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024)).

[69] *See* Pl.'s 3d Am. Pet. ¶¶ 32, 54; Pl.'s 5th Am. Pet. ¶¶ 33, 66, 133.

[70] *See Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) ("It has long been the law that the phrase 'amount in controversy,' in the jurisdictional context, means 'the sum of money *or the value of the thing* originally sued for . . . .'"); *M&M Livestock, LLC v. Robinson*, 2025 Tex. Bus. 29, ¶ 20, 2025 WL 2207943, at *4 (8th Div.) (mem. op.); *see also Amount in Controversy*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The damages claimed or relief demanded by the injured party in a lawsuit.").

[71] TEX. R. CIV. P. 354(a) (original filing), 355(b)(2)(A) (removal).

15% member interest and \$1.84 million in distributions over three years.[72] That reasoning is flawed in at least two respects, however. First, SSER's distributable net profits bear no legal or logical relationship to the damages SSER is actually pursuing. SSER's primary monetary claim is for a constructive trust over the unbuilt *Manvel Property* and its future profits—a separate enterprise, owned by different parties, in a different city.[73] The profitability of SSER's existing League City facility cannot serve as a reliable proxy for the value of a distinct Manvel facility that SSER never built.

¶ 49. Second, the inference that SSER urges would require Defendants to speculate about both what the proper damages theory is and how to quantify it—neither of which should be demanded of a removing party evaluating the face of the pleadings. The 30-day removal clock runs from the date a party discovers (or reasonably should discover) facts establishing jurisdiction, not from the date those facts could theoretically have been inferred through a chain of suppositions.

¶ 50. Nor do the counterclaims close the gap.[74] A liberal construction of Bashiri and Dr. Joseph's First Amended Counterclaim shows they seek at least \$2

---

[72] Pl.'s Mot. 15.

[73] Pl.'s 3d Am. Pet. ¶¶ 76–79 (under subheading "Request for Constructive Trust"); Pl.'s 5th Am. Pet. ¶¶ 71, 83, 141–47.

[74] TEX. GOV'T CODE § 25A.004(i); *Sun Metals Grp., LLC v. Yu*, 2025 Tex. Bus. 48, ¶ 4, 2025 WL 3515409, at *1 n.1 (1st Div.) (mem. op.) ("[W]hen calculating the amount in controversy, the Court consider[s] all claims properly joined before the Court . . . .All claims properly joined before the Court—that is, the entire lawsuit—includes counterclaims." (internal quotation marks omitted)).

million in damages.[75] That, together with the $1.84 million SSER alleges against Bashiri, still falls well short of the $5-million threshold. And Wang and BB&W seek only declaratory relief and attorneys' fees,[76] with no pleaded allegations supporting any dollar amount in damages.

¶ 51. Because the pleadings do not establish the requisite amount in controversy, the Court turns to the Notice of Removal. When the pleadings are silent on the jurisdictional amount, the notice of removal controls unless a party presents evidence that the amount has been falsely stated to manipulate jurisdiction, or that a different amount is readily established by, for example, a statutory fee schedule.[77]

¶ 52. What SSER's pleadings leave open to speculation, the Notice of Removal clarifies. It references SSER's own expert report, served on Defendants on March 23, 2026, which quantifies SSER's damages at over $16 million.[78] That report is the first document to reasonably establish an amount in controversy exceeding $5 million. Because Defendants filed their Notice of Removal on April 22, 2026, exactly 30 days after receiving the report, removal was timely.[79]

---

[75] Bashiri & Dr. Joseph's 1st Am. Countercl. ¶¶ 33 (alleging damages exceeding $1 million for breach of contract by SSER), 40 (alleging damages exceeding $1 million for breaches of fiduciary duty by Dr. Thomas, Dr. Basra, and Mr. Vora, collectively).

[76] Wang & BB&W Countercl. ¶¶ 8–13.

[77] *C Ten*, ¶ 50, 708 S.W.3d at 243; *Yaun v. Battle & Sands Energy Corp.*, 2026 Tex. Bus. 9, ¶ 9, 2026 WL 598409, at *2 (11th Div.) (mem. op.) (quoting *C Ten*, ¶¶ 49–50, 708 S.W.3d at 243).

[78] Defs.' Notice of Removal ¶¶ 33–34; Ex. B to Defs.' Notice of Removal (Pl.'s Designation of Expert Witness and Expert Report of Sasha Gartman).

[79] Defs.' Notice of Removal ¶¶ 36–38.

¶ 53.  Remand on the basis of untimely removal is denied.

**D.    All asserted claims fall within the Court's original jurisdiction, rendering supplemental jurisdiction inapplicable.**

¶ 54.  Finally, SSER argues that, regardless of the outcome of its forum-selection and timeliness arguments, the majority of its claims should be remanded to the District Court because (1) the claims do not independently fall within the Court's original jurisdiction and (2) SSER objects to the Court's exercise of supplemental jurisdiction over them.[80]

¶ 55.  SSER's supplemental-jurisdiction argument rests on a premise the Court rejects: that each cause of action must be analyzed in isolation and that any claim not expressly enumerated in Section 25A.004(b) or (d) necessarily falls within the Court's supplemental jurisdiction rather than its original jurisdiction. The statute does not require that atomized approach. This Court confirmed as much in *Reed v. Rook TX, LP*, which held that the term "action" in Section 25A.004 "refers to the lawsuit or judicial proceeding generally, as opposed to only individual causes of action or theories of liability," and that the Court's jurisdiction extends to the

[80] Pl.'s Mot. 16–17. Under Texas Government Code 25A.004(f), when an action is properly before the Court under Subsections (b), (c), (d), or (e), the Court may exercise supplemental jurisdiction over any individual claim not otherwise covered if it is "so related to the action that the claim forms part of the same case or controversy." Such  supplemental jurisdiction requires the agreement of all parties and the presiding judge. If a party objects to supplemental jurisdiction, "the claim may proceed in a court of original jurisdiction concurrently with any related claims proceeding in the business court."

proceeding as a whole once original jurisdiction is established.[81] The same framework governs here.

¶ 56.  The Fifth Amended Petition does not present a collection of unrelated claims. Rather, it presents a single, integrated business dispute concerning the governance and internal affairs of SSER, the rights and obligations of its members and managers, the alleged diversion of a corporate opportunity, and the alleged misappropriation of SSER's trade secrets and proprietary materials. When the Court examines the substance of that dispute, rather than the labels attached to individual causes of action, it becomes clear that the claims fall within multiple categories of this Court's original jurisdiction.

### 1.  Governance and internal affairs

¶ 57.  A substantial portion of the case concerns the governance and internal affairs of SSER as a limited liability company. Claims for breach of the Company Agreement, declaratory relief regarding membership rights, and disputes arising from the removal of members all arise directly from the governance of an LLC and fall within Section 25A.004(b)(2).[82] Because their resolution also requires application of the Texas Business Organizations Code governing LLC membership,

---

[81] 2025 Tex. Bus. 23, ¶¶ 10, 24–25, 718 S.W.3d 270, 275–76, 280–81 (3d Div.).
[82] Pl.'s 5th Am. Pet. ¶¶ 52–58, 137–39.

management, and governance, they likewise arise out of the Business Organizations Code within the meaning of Section 25A.004(b)(7).

¶ 58.  The same is true of SSER's oral-contract claim. SSER alleges that it granted Bashiri a 15% ownership interest—without the need for a capital contribution—in exchange for his agreement to serve as SSER's Chief Nursing Officer and Chief Operating Officer.[83] That alleged agreement concerns both the manner in which Bashiri acquired his membership units and the obligations he undertook in return, placing it squarely within the governance of the company and the rights and obligations of its members and managers.

¶ 59.  The tortious-interference claims are similarly rooted in the governance dispute. SSER alleges that Defendants interfered with SSER's contractual and prospective business relationships by diverting a corporate opportunity and acting contrary to the company's interests while serving as members, managers, or controlling persons of SSER.[84] As pleaded, those claims arise not from an ordinary dispute between unrelated market participants, but from an alleged breakdown in the governance and management of the company itself. They therefore bear a direct relationship to the internal affairs and operation of the LLC.

---

[83] *Id.* ¶¶ 20, 59–63.
[84] *Id.* ¶¶ 102–12.

## 2. *Alleged breaches of duties by owners and managers*

¶ 60. The fiduciary-duty claims form the centerpiece of SSER's case. SSER alleges that certain Defendants, while serving as members, managers, or controlling persons of SSER, diverted a corporate opportunity, competed against the company, misused confidential information, concealed material facts, and otherwise acted against SSER's interests.[85] Those allegations fall squarely within Section 25A.004(b)(5), which expressly encompasses actions alleging breaches of duties owed by owners, controlling persons, and managerial officials.

¶ 61. The same alleged conduct underlies many of SSER's remaining causes of action. The claims for aiding and abetting breach of fiduciary duty, civil conspiracy, fraud by nondisclosure, tortious interference, unjust enrichment, money had and received, and unfair competition all flow from that same alleged course of conduct—the exploitation of positions of trust within SSER to advance Defendants' own interests at the company's expense.[86] Though cast as distinct causes of action, they are alternative legal theories seeking relief for the same alleged misuse of managerial authority, confidential information, and business opportunities by persons who owed duties to SSER. These are not separate controversies.

## 3. *Alleged misappropriation of trade secrets and proprietary information*

---

[85] *Id.* ¶¶ 72–77.
[86] *Id.* ¶¶ 64–71, 78–92, 102–17, 132–34.

¶ 62. The Fifth Amended Petition also alleges that Defendants misappropriated confidential and proprietary information, trade secrets, and other protected materials. Those allegations support SSER's claims for trade-secret misappropriation under TUTSA, trademark or trade-name infringement, unfair competition, conversion, theft, and related theories seeking recovery for the alleged misuse of SSER's proprietary information.[87] Such claims fall within Section 25A.004(d)(4), which encompasses actions relating to intellectual property and trade secrets, and Section 25A.004(d)(5), which encompasses actions arising under Chapter 134A of the Texas Civil Practice and Remedies Code.

¶ 63. The Court is unpersuaded by SSER's attempt to characterize the Texas Theft Liability Act and conversion claims as independent supplemental claims.[88] As pleaded, those claims do not involve unrelated property. They arise from the same alleged misappropriation of confidential information, proprietary materials, trade secrets, and business opportunities that underlies SSER's trade-secret and intellectual-property claims. Labeling a claim differently does not remove it from the Court's original jurisdiction when the underlying conduct is within that jurisdiction.

¶ 64. Finally, several of the matters SSER identifies as supplemental claims are not independent causes of action at all. Accounting and constructive trust are

[87] *Id.* ¶¶ 93–101, 113–31.
[88] Pl.'s Mot. 16; Pl.'s Reply 9–10.

equitable remedies that depend on the underlying substantive claims.[89] Their inclusion in the Fifth Amended Petition does not create a separate jurisdictional issue given that the substantive claims supporting those remedies otherwise fall within the Court's original jurisdiction.

¶ 65. SSER's overarching argument—that each cause of action must independently satisfy one of the enumerated categories in Section 25A.004—is also foreclosed by *Reed*. There, this Court declined to apply a "nature of the controversy" test that would have required governance or internal affairs to be the "predominant" focus of the litigation, explaining that the Legislature did not include such a requirement and that courts should not superimpose one onto the statute.[90] The Court further held that Section 25A.004 does not require the Court to "granulate each" cause of action "into every individual factual basis for liability"; rather, jurisdiction extends to the "lawsuit or judicial proceeding generally" once any statutory basis for original jurisdiction is satisfied.[91] So too here. SSER's claims arise from a single interlocking dispute over LLC governance, managerial misconduct, and trade-secret misappropriation. The statute requires no more. Each

---

[89] *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015) (explaining that a constructive trust is an equitable remedy); *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 674 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (explaining that an accounting may be a remedy related to a cause of action or its own suit in equity).
[90] *Reed*, ¶¶ 19–22, 718 S.W.3d at 278–80.
[91] *Id.* ¶ 25, 718 S.W.3d at 280.

of those subjects falls within this Court's original jurisdiction, and the proceeding as a whole does as well.

¶ 66. In sum, SSER's argument gives insufficient weight to the statute's focus on civil "actions" and places too much emphasis on the parsing of individual causes of action into discrete jurisdictional silos. The Fifth Amended Petition alleges a single business dispute involving LLC governance, breaches of duties by managers and owners, and the misappropriation of trade secrets and proprietary information—subjects that independently fall within Sections 25A.004(b)(2), (b)(4), (b)(5), (b)(7), (d)(4), (d)(5), and (e). Viewed as a whole, this action falls comfortably within the Court's original jurisdiction, and the Court has no occasion to determine whether any particular claim might also be within its supplemental jurisdiction.

## CONCLUSION

¶ 67. For the foregoing reasons, the Court concludes that (1) Section 12.3 of the Company Agreement includes an unenforceable venue-selection provision, making the parties' agreement to litigate in Galveston County void; (2) the Eleventh Division is located in Galveston County for purposes of venue, such that removal to this Court would not violate Section 12.3 in any event; (3) removal of this case to the Business Court was timely; and (4) all of SSER's claims fall within this Court's original jurisdiction, rendering supplemental jurisdiction inapplicable.

¶ 68. IT IS THEREFORE ORDERED that SSER's Motion to Remand is **DENIED**.

IT IS SO ORDERED.

_____
BRIAN STAGNER
Judge of the Texas Business Court,
Eighth Division, *sitting by assignment in the Eleventh Division*

SIGNED: June 11, 2026